Donna WANDRY, Plaintiff-Appellant-Petitioner,

v.

The BULL'S EYE CREDIT UNION, and Cumis Insurance Society, Inc., Defendants-Respondents.

Supreme Court

*No. 84–822. Argued February 10, 1986.—Decided April 2, 1986.*

(Also reported in 384 N.W.2d 325.)

For the plaintiff-appellant-petitioner there were briefs by *Keith Kostecke* and *Jerome A. Maeder, S.C.*, Wausau, and oral argument by *Mr. Kostecke* and *Jerome A. Maeder.*

For the defendants-respondents there was a brief by *Lukas and Huttenberg,* Wisconsin Rapids, and *Walter H. Piehler, David A. Piehler, David J. Lukas* and *Terwilliger, Wakeen, Piehler, Conway & Klingberg, S.C.*, Wausau, and oral argument by *David A. Piehler.*

SHIRLEY S. ABRAHAMSON, J.   This is a review of an unpublished decision of the court of appeals filed June 28, 1985, summarily affirming the judgment of the circuit court of Wood county, Fred A. Fink, circuit court judge, dismissing the action.

The question of law presented to the circuit court, the court of appeals and this court is whether the complaint states a claim for wrongful discharge under the public policy exception to the rule, generally referred to as the employment-at-will rule, that an employee hired for an indefinite period is dischargeable at the will of the employer. This court recognized a public policy exception to the employment-at-will rule in *Brockmeyer v. Dun & Bradstreet,* 113 Wis. 2d 561, 335 N.W.2d 834 (1983).

The circuit court and the court of appeals concluded that the claim for wrongful discharge did not fall within the *Brockmeyer* public policy exception. We conclude that the complaint states a claim under *Brockmeyer* upon which relief may be granted. Accordingly, we reverse the decision of the court of appeals and the judgment of the circuit court and remand the cause for further proceedings.

The case arises under a motion to dismiss, and the facts set forth in the complaint are, for purposes of deciding the motion, assumed to be true. According to the complaint, the plaintiff-employee, Donna Wandry, worked as a cashier for The Bull's Eye Credit Union. The complaint does not allege that there was an employment contract. We infer from the complaint that the plaintiff-employee and Bull's Eye had an employment-at-will relationship, that is, the plaintiff-employee was hired for an indefinite period and her employment was terminable at the will of the employer. On March 26, 1981, a customer asked her to cash a $468.09 payroll check drawn by Consolidated Papers, Inc. The plaintiff-employee alleges that she did not know that the check had been stolen or that the endorsement was forged. She cashed the check after submitting it to her supervisor for approval. The plaintiff-employee asserts that she acted in accordance with the employer's usual and customary procedures for cashing checks.

Consolidated Union stopped payment on the check, and Bull's Eye suffered a loss of $468.09. The president of Bull's Eye advised the plaintiff-employee that she must reimburse Bull's Eye in the amount of $468.09; if she did not pay, she would not be bondable and could not work for Bull's Eye. According to the

complaint, all Bull's Eye employees were covered by a blanket bond; no individual bond existed for the plaintiff-employee. The plaintiff-employee refused to pay Bull's Eye the $468.09, and, according to the complaint, Bull's Eye terminated her employment for that reason. The plaintiff-employee then commenced this action against The Bull's Eye Credit Union,[1] claiming that she had been wrongfully discharged and seeking lost wages and job reinstatement.

In deciding whether the complaint states a claim for wrongful discharge, we start with the *Brockmeyer* decision. In *Brockmeyer* the court recognized "a narrow public policy exception," *Brockmeyer, supra* 113 Wis. 2d at 572, to the well-established common-law doctrine that an employer has the right to discharge an at-will employee "for good cause, for no cause and even for cause morally wrong." *Id.* at 567. In recognizing a public policy exception in *Brockmeyer,* this court joined courts in forty-two states that have adopted exceptions to the employment-at-will rule.[2]

---

[1] The other defendant is Cumis Insurance Society which allegedly insures the employer for the claim made in this action.

[2] See Fred Strasser, *The Death of a Doctrine?,* Nat'l L. J., Jan. 20, 1986, p. 6. For a state-by-state discussion of wrongful discharge, see Larson, *Unjust Dismissal* (1985), and Perritt, *Employment Dismissal Law and Practice* (1984).

For a discussion of *Brockmeyer, see* Comment, *Brockmeyer v. Dun & Bradstreet: The Narrow Public Policy Exception to the Terminable-at-Will Rule,* 38 U. Miami L. Rev. 565 (1984); Gants, *Wrongful Discharge in Wisconsin: An Update,* 57 Wis. Bar Bull. 12 (Oct. 1984).

The court in *Brockmeyer* explained that judicially recognized exceptions fall into two categories.[3] The broader judicial exception reads an implied covenant of good faith and fair dealing in the employment-at-will relationship; a discharge made in bad faith justifies an employee's claim for breach of contract. *Id.* at 569. The narrower judicial exception reads a public policy exception in the employment-at-will relationship; an employee may recover damages for termination of employment if the "termination violates a well-established and important public policy." *Id.* at 569. Our court adopted the latter, characterizing it as "a narrow public policy exception." *Id.* at 572.

The *Brockmeyer* court, *id.* at 573–74, set forth the following rules for testing a complaint under the "narrow public policy exception":

I. *The Complaint Must Identify the Public Policy.* The employee has the burden of identifying a fundamental and well-defined mandate of public policy which the discharge is alleged to have violated. *Id.* at 573.[4] Furthermore, the employee must cite a constitu-

---

[3] Some commentators treat enforcement of an employer's policies contained in personnel policy manuals as a third modification of the employment-at-will rule. This court has declared that:

"[A] handbook may . . . convert the employment relationship into one that could only be terminated by adherence to contractual terms—that the acceptance by the employee . . . of the terms set forth in the handbook create[s] an employment contract." *Ferrarro v. Koelsch,* 124 Wis. 2d 154, 157, 158, 368 N.W.2d 666 (1985).

[4] Once the employee has demonstrated that the conduct that caused the discharge was consistent with a clear and compelling public policy, the burden of proof shifts to the employer to prove that the dismissal was for just cause. *Brockmeyer, supra* 113 Wis. 2d at 574.

tional or statutory provision evidencing a "specific declaration" of this fundamental and well-defined public policy. These statutory and constitutional expressions of public policy are incorporated into every employment-at-will relationship. *Id.* at 573.

Ordinarily the statute does not expressly state the public policy underlying the enactment of the statute. Whether the public policy is fundamental and well defined is an issue of law for the court. The *Brockmeyer* court acknowledged that the concept of public policy is vague and advised courts to "proceed cautiously when making public policy determinations." *Id.* at 573. The motion to dismiss enables the court "to screen cases . . . for failure to state a claim . . . if the discharged employee cannot allege a clear expression of public policy." *Id.* at 574. The public policy, however, need not be expressed in a statute protecting an employee from discharge. The legislature "has not and cannot cover every type of wrongful termination that violates a clear mandate of public policy." *Id.* at 576. There are public policies embodied in statutes and the constitution that do not specifically address wrongful discharge but are nevertheless meant to be "inherently incorporated into every employment-at-will relationship." *Id.* at 573.

II. *The Complaint Must Show that the Discharge Contravenes the Public Policy.* A discharge is actionable when the discharge contravenes the public policy embodied in the statute.

In *Brockmeyer* the court set forth several guidelines for determining whether the discharge contravenes the public policy:

1. An employer is liable for wrongful discharge if it discharges an employee for refusing to violate a

constitutional or statutory provision. Employers will be held liable for those terminations that effectuate an unlawful end. *Id.* at 573.

2. The discharge must clearly contravene the public welfare and gravely violate paramount requirements of public interest. *Id.* at 573, 574.

3. An employer is liable for wrongful discharge if the employer discharges an employee for conduct that is "consistent with a clear and compelling public policy." *Id.* at 574.

4. An employer is not liable for wrongful discharge merely because the employee's conduct precipitating the discharge was praiseworthy or the public derived some benefit from it. *Id.* at 573, 574.

We examine the complaint first to determine whether the plaintiff-employee has identified a public policy violated by the discharge and the constitutional or statutory source of the public policy.

The plaintiff-employee identifies the following as the well-defined public policy implicated in her termination and enforceable in an action for wrongful discharge: The public interest is not served if an employer uses coercive economic power to shift the burden of a work-related loss from the employer to an employee without giving the employee an opportunity to establish that the loss was not caused by the employee's carelessness, negligence or wilful misconduct. She cites sec. 103.455, Stats. 1983–84, as the statutory source of this well-defined public policy.[5]

---

[5] The complaint did not cite a statute. Rather than having the plaintiff amend the complaint, counsel for both parties apparently agreed that the plaintiff-employee would rely on sec. 103.455.

Sec. 103.455 prohibits an employer from deducting certain work-related losses from an employee's wages without following certain procedures to establish the responsibility for the loss. It does not specifically prohibit an employer from seeking reimbursement from an employee for a work-related loss. Sec. 103.455 provides as follows:

> **"Deductions for Faulty Workmanship, Loss, Theft or Damage:** No employer shall make any deductions from the wages due or earned by any employee, who is not an independent contractor, for defective or faulty workmanship, lost or stolen property or damage to property, unless the employee authorizes the employer in writing to make such deductions or unless the employer and a representative designated by the employee shall determine that such defective or faulty work, loss or theft, or damages are due to the worker's negligence, carelessness, or wilful and intentional conduct on the part of such employee, or unless the employee is found guilty or held liable in a court of competent juridiction by reason thereof. If any deduction is made or credit taken by any employer, that is not in accordance with this section, the employer shall be liable for the twice the amount of the deduction or the credit taken in a civil action taken by said employee. Any agreement entered into by employer and employee contrary to this section shall be void and of no force and effect. In case of a disagreement between the two parties, [DILHR] shall be the third determining party subject to any appeal to the court."

The court of appeals concluded that sec. 103.455 "does not declare a fundamental and well-defined public policy which prohibits under threat of discharge the

44

demand of an employer for repayment from an employee. The statute is a narrow prohibition against the confiscation of employee earnings, not a fundamental and well-defined proscription against discharge."[6]

The principle of law upon which the statute is based is that if an employee does not render the services for which the employee was hired, or causes the employer to suffer a loss, the employee is not entitled to full compensation.[7] Sec. 103.455 is aimed at preventing employers from using coercive economic power to shift the burden of a work related loss from the employer to the employee, without giving the employee an opportuni-

---

[6] According to *Brockmeyer* there is a wrongful discharge if the discharge contravenes a fundamental and well defined public policy evidenced in a statute. The statute need not be a proscription against discharge. Thus the fact that sec. 103.455 does not expressly prohibit the employer from discharging an employee who refuses to agree to a deduction or that there is no statute which expressly prohibits or penalizes the discharge of an employee who contrary to the employer's demand refuses to reimburse the employer for losses not occasioned by that employee's carelessness, negligence, or wilful misconduct is not determinative of whether the discharge is wrongful.

[7] "Respondents seek to recover for deductions made from their wage for faulty and defective work without a mutual determination that the defective pieces were the result of the employees' carelessness, negligence, or wilful misconduct, as required by statute. *The purpose of this statute was to require the employer to give the employee an opportunity to protect his rights on the question of whether defective parts were due to his negligence. The earnings of the employee depend upon his services properly rendered.* It is considered that the purpose of the statute is to prohibit an arbitrary determination by the employer that no compensation is due the employee by reason of defective work due to his negligence. . . . *The statute must be read in its entirety."Zarnott v. Timken-Detroit Axle Co.,* 244 Wis. 596, 600–601, 13 N.W.2d 53 (1944). (Emphasis added.)

45

ty to establish that the loss was not caused by the employee's carelessness, negligence or wilful misconduct. When the loss is the fault not of the employee but of, *e.g.,* defective material or a defective machine, the employer must bear the loss. When the loss is the fault of the employee, the employer may impose on the employee the burden of paying for the loss.

The court summarized the purpose of the statute in *Donovan v. Schlesner,* 72 Wis. 2d 74, 240 N.W.2d 135 (1976), as follows:

> "The entire purpose of the statute is to preclude any deduction for losses until the employee has an opportunity to show his lack of fault. An employer is not prohibited under the statute from deducting from an employee's wages those losses in business which are due to his negligence, carelessness or willful misconduct. However, he may do so only in accord with one of the methods provided by statute which are designed to protect the employee from arbitrary action." *Id.* at 82.

In this case Bull's Eye is not deducting the amount of loss from the plaintiff-employee's paycheck; it is asking the plaintiff-employee to reimburse it from the employee's assets. We need not decide whether Bull's Eye would be liable for the civil penalty created by sec. 103.455. That Bull's Eye's conduct may not come within the express language of sec. 103.455 is not determinative of whether the complaint states a claim for wrongful discharge. *Brockmeyer* does not require that the discharge violate a statute to constitute a claim for wrongful discharge. *Brockmeyer* requires only that the discharge contravene the public policy evidenced in the statute. The public policy of a statute is not limited to the circumstances described in the statute. The public

policy of a statute may be invoked in contexts outside the precise reach of the statute.

In *Zarnott* we said that sec. 103.455 becomes part of the contract, and the parties are bound by its terms. *Zarnott v. Timken-Detroit Axle Co.,* 244 Wis. 596, 602, 13 N.W.2d 53 (1944). In *Brockmeyer* we said that "it is entirely appropriate that the common law now recognize established constitutional and statutory policies in employment relationships" as a basis for a cause of action for wrongful discharge. *Brockmeyer, supra* 113 Wis. 2d at 576–77.

We conclude that sec. 103.455 articulates a fundamental and well-defined public policy proscribing economic coercion by an employer upon an employee to bear the burden of a work-related loss when the employee has no opportunity to show that the loss was not caused by the employee's carelessness, negligence, or wilful misconduct. We further conclude that the complaint has identified a statutory provision evidencing a specific declaration of a fundamental and well-defined public policy.

We must then determine whether the facts alleged in the complaint, liberally construed,[8] establish a connection between the discharge and the public policy embodied in the statute. *Brockmeyer* frames this issue as follows: by sanctioning this wrongful discharge action, do "we advance an already declared legislative public policy. . . ." *Brockmeyer, supra* 113 Wis. 2d, at 576–77.

In this case the complaint alleges facts showing that the plaintiff-employee followed Bull's Eye's estab-

---

[8] Sec. 802.06(2)(f), Stats. 1983–84; *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 731, 275 N.W.2d 660 (1979).

lished procedures in cashing the check in issue and that she was not guilty of carelessness, negligence or wilful misconduct. We infer from the complaint that she was never given the opportunity to show that the work-related loss was not her fault, that Bull's Eye knew that she had no opportunity to show that the loss was not her fault, and that Bull's Eye was nevertheless seeking to impose the loss on her. We read the complaint as alleging that the discharge resulted from the plaintiff-employee's refusal to pay for a work-related loss which the plaintiff-employee asserts was not her fault, although the employer failed to give her an opportunity to protect her right on the question of whether the loss was her fault.

This case falls within the second and third guidelines. The discharge clearly violates the paramount requirements of the public interest and is based on the plaintiff-employee's conduct that is consistent with a clear and compelling public policy. By discharging the employee for refusing to reimburse it for the loss, Bull's Eye violated the fundamental and well-defined public policy evidenced in sec. 103.455. Furthermore the plaintiff-employee's conduct—her refusal to reimburse Bull's Eye when there was no opportunity to protect her right on the question of fault—is consistent with the public policy embodied in sec. 103.455.

We conclude that the complaint alleges that the discharge contravenes the public policy embodied in sec. 103.455. In upholding the complaint in this case the court advances the public policy declared in the statute, thereby complementing the legislative objective of maintaining the proper balance between the

public interest and the interests of employers and employees.

For the reasons set forth, we conclude that the complaint states a claim upon which relief can be granted on the basis of the *Brockmeyer* public policy exception to the employment-at-will rule. We therefore reverse the decision of the court of appeals and the judgment of the circuit court and remand the case to the circuit court for further proceedings.

*By the Court.*—The decision of the court of appeals is reversed; the judgment of the circuit court. is reversed; and the cause is remanded to the circuit court for further proceedings.

STEINMETZ, J. *(dissenting).* The majority extends *Brockmeyer v. Dun & Bradstreet,* 113 Wis. 2d 561, 335 N.W. 2d 834 (1983), to a point beyond which the court intended by that decision. The majority reaches this result by construing the public policy of a statute to be broader than the unambiguous language of the statute. The majority specifically states:

> "*Brockmeyer* does not require that the discharge violate a statute to constitute a claim for wrongful discharge. *Brockmeyer* requires only that the discharge contravene the public policy evidenced in the statute. The public policy of a statute is not limited to the circumstances described in the statute. The public policy of a statute may be invoked in contexts outside the precise reach of the statute." At 46–47.

The majority also states: "Ordinarily the statute does not expressly state the public policy underlying the enactment of the statute." At 42. While this statement may be technically correct, it does not mean that this

49

court should establish a public policy broader than the statute's content.

The majority makes an extension of *Brockmeyer* which I would not make. I would construe the public policy of a statute to be limited to the unambiguous circumstances covered by the statute. I would further hold that sec. 103.455, Stats., does not prohibit an employer from requesting an employee to make reimbursements for employer losses, when enforced by the threat of termination. Accordingly, I would dismiss the complaint.

In *Brockmeyer,* the court did not define the public policy of a statute to be broader than the literal proscriptions of the statute. We made quite clear that an employer violates public policy by contravening a statutory or constitutional provision or by requiring an employee to violate a statute or constitutional provision. The limited scope of this exception to the employment at will doctrine, as recognized by the public policy exception, is clearly stated in *Brockmeyer:*

> "Given the vagueness of the concept of public policy, it is necessary that we be more precise about the contours of the public policy exception. A wrongful discharge is actionable when the termination clearly contravenes the public welfare and gravely violates paramount requirements of public interest. The public policy must be evidenced by a constitutional or statutory provision. An employee cannot be fired for refusing to violate the constitution or a statute. Employers will be held liable for those terminations that effectuate an unlawful end." *Id.* at 573.

In fact, I do not believe that the policy of a statute ever can be broader than the conduct which the statute

prohibits or requires. Public policy reflects the conduct required by a statute. The public policy of a statute therefore is equivalent to the legislature's intent when enacting it. Thus, this court construes statutes to implement the intent of the legislature. As a result, the legislative intent, or purpose, of a statute defines the scope of the effect of the statute. Conduct not required or prohibited by a statute by definition does not reflect public policy. This conclusion is self-evident from the fact that conduct not within the scope of a statute is not illegal. Finally, I believe that *Brockmeyer* clearly intended the public policy exception to the employment at will doctrine to correlate with the legislative intent of a statute. We stated as much when we limited employer liability to terminations that "effectuate an unlawful end." *Id.*

Bull's Eye's liability for Wandry's termination, therefore, depends on whether sec. 103.455, Stats., prohibits an employer from requesting an employee to compensate the employer for bad checks accepted by the employee, upon threat of job termination. The majority does not resolve this question, although the opinion intimates that Bull's Eye's conduct does not violate the statute. The majority avoids this issue by concluding that whether Bull's Eye's conduct comes within the scope of sec. 103.455 is not determinative of whether there was a wrongful discharge. At 47. I believe, however, that this issue is dispositive on the merits of this case.

Section 103.455, Stats., prohibits employers from deducting earned wages without giving employees a prior opportunity to determine whether the employee caused the employer to suffer an economic loss. The statute, however, does not limit an employer's right to

51

■■■■■■■■■■■■■■■■

terminate an employee prospectively when the employer believes that the employee is a source of loss, or otherwise not a good employee. As long as the employer does not deduct accrued wages, the employer is free to deal with the employee's future employment as it deems appropriate. Section 103.455 protects vested interests in past earned income. The statute, however, does not confer job security. As a result, an employer does not violate the statute unless it withholds wages without the prior consent of the employee. *See Zarnott v. Timken-Detroit Axle Co.,* 244 Wis. 596, 600, 13 N.W. 2d 53 (1944), in which the court stated that the purpose of the statute is to prohibit an arbitrary determination by the employer that no compensation is due; *see also Donovan v. Schlesner,* 72 Wis. 2d 74, 240 N.W. 2d 135 (1976). An employer certainly can terminate an employee prospectively without having to prove the employee's fault in causing employer loss.

I do not believe that sec. 103.455, Stats., which permits employee terminations without proof of just cause, prohibits an employer from giving an employee a choice between termination and reimbursement for employer losses. Such an option gives the employee an *opportunity for future employment which otherwise* would not exist. The employer otherwise would simply terminate the employee without granting any opportunity to avoid such a fate in that case. By contrast, the employee controls his own fate in this case. If the employee considers the requested reimbursement fair, he can pay it and continue his employment. If the employee disagrees with the assessment, he can retain his wages and seek other employment. Under the latter scenario, the employee gets the benefit of sec. 103.455 by retaining his past earned wages. He does not have

the added job security which results from requiring just cause as a condition of firing. Section 103.455, however, was not intended to grant job security.

I disagree with the majority's construction of the purpose of sec. 103.455, Stats. The majority states that the purpose of the statute is to proscribe "economic coercion by an employer upon an employee to bear the burden of a work-related loss." At 47. Under the majority's economic coercion test, an employer cannot terminate an employee without proving just cause when the employer believes the employee is a source of loss. If the employer permits the employee to avoid termination by agreeing to reimburse the employer for loss, under the majority's analysis this constitutes economic coercion. I do not believe that it makes any substantive difference under the majority's analysis whether the employer expressly makes reimbursement a condition of future employment or operates with an unspoken agreement that reimbursement will prevent termination. Either situation effectively would constitute "coercion," although one form is more subtle than the other. The only way an employer could avoid such coercion is by absolutely refusing to allow reimbursement for losses. Section 103.455, however, clearly does not prohibit employees from agreeing to make reimbursement. The statute expressly permits reimbursement when the "employee authorizes the employer in writing to make such deduction."

The artificiality of the majority's analysis is indicated by the fact that other employers still can terminate employees without proving just cause when the employer believes that the employee is a source of economic loss. The only limitation on this right is that the employer cannot be willing to accept reimbursement

for such losses as a condition of future employment. Under this analysis, Bull's Eye can terminate Wandry again after this proceeding is complete if she accepts further worthless checks. The reason such a subsequent termination would be acceptable is because the termination would be based on the employer's belief that Wandry caused economic loss, rather than her refusal to make reimbursement. That the majority opinion permits this result indicates that the holding in this case is based on an insubstantial distinction. The majority relies on the fact that Bull's Eye requested reimbursement. Failure to make reimbursement, however, is simply another way of stating that the employer believed that the employee caused economic loss. Because an employer can terminate an employee without proving such allegations, I believe that Bull's Eye can terminate Wandry if she does not agree to reimburse the employer for worthless checks.

I believe that the majority's extension of *Brockmeyer* destroys the balance established in that case between the interests of employees, employers and the public. We stated in *Brockmeyer,* 113 Wis. 2d at 574, that:

> "We believe that the adoption of a narrowly circumscribed public policy exception properly balances the interests of employees, employers and the public. Employee job security interests are safeguarded against employer actions that undermine fundamental policy preferences. Employers retain sufficient flexibility to make needed personnel decisions in order to adapt to changing economic conditions. Society also benefits from our holding in a number of ways. A more stable job market is achieved. Well-established public policies are advanced. Finally, the public is protected against friv-

olous lawsuits since courts will be able to screen cases on motions to dismiss for failure to state a claim or for summary judgment if the discharged employee cannot allege a clear expression of public policy."

Today's holding destroys the proper balance by opening the courts to every termination based on economic loss to the employer. To state a claim, the employee only has to allege that the termination would not have occurred if the employee had offered to reimburse the employer for such losses. Under the majority's analysis, such an allegation would satisfy the "economic coercion" requirement for a wrongful discharge. The employer then could only prevail by proving that it would have refused reimbursement and would have discharged the employee regardless of such an offer. Because an employee has the right to reimburse, however, no employer would absolutely refuse such an offer. Such an attitude would be irrational and I do not believe employers are so irrational. Thus, the majority essentially establishes a standard which prohibits employers from discharging employees without proving just cause.

The majority decision ignores *Brockmeyer*'s statement that it is the public policy of the constitution and legislation that will be enforced by the law of unlawful discharge. Instead, the court will now determine the "spirit" of constitutional provisions and legislation, and as a result, the court will set public policy. We declined to do that in *Brockmeyer* and I would consistently decline to do that in this case.

To summarize, I would conclude that Wandry was an employee at will of Bull's Eye. I disagree that Bull's Eye violated the public policy of sec. 103.455, Stats.,

which only prohibits employers' from deducting accrued wages. The statute does not prohibit employers from prospectively terminating employees. Bull's Eye may have acted harshly by discharging Wandry, but that was its prerogative. Accordingly, I would affirm the court of appeals which correctly applied the rule of *Brockmeyer* and the law of this state to the facts of this case.