**Frank B. SHAVER, Plaintiff,**

v.

**F.W. WOOLWORTH CO., Defendant.**

**No. 86–C–285.**

United States District Court,
E.D. Wisconsin.

Dec. 3, 1986.

Walter F. Kelly, Sutton & Kelly, Milwaukee, Wis., for plaintiff.

P. Kevin Connelly, Lederer, Reich, Sheldon & Connelly, Chicago, Ill., for defendant.

## DECISION AND ORDER

CURRAN, District Judge.

On September 24, 1982, the F.W. Woolworth Co. announced its decision to close its Woolco Division, which consisted of 336 stores and, as Woolworth claims, resulted in the largest liquidation in the history of retailing. At the time the decision was made, Frank Shaver was employed at Woolworth's Central Accounting Office (CAO) in Milwaukee, Wisconsin as a leasing specialist. He had been a Woolworth employee for over twenty years. The Woolco liquidation necessitated massive layoffs, including 183 of 673 employees in the CAO. On October 27, 1982, Frank Shaver was informed at a group meeting that he was being laid off. Many of the affected employees, including Shaver, were asked to remain for certain periods of time, apparently to assist in the winding down process and in training replacements. Shaver's last day of work was June 30, 1983.

Shaver commenced an action in this court on May 2, 1984, premising jurisdiction on the Age Discrimination in Employment Act, 29 U.S.C., Section 621 et seq. The complaint also purported to state pendent state claims, including breach of contract, deprivation of plaintiff's reasonable reliance, negligent termination, intentional misrepresentation and intentional infliction of emotional distress. By order dated August 21, 1985, this court granted the defendant's motion for summary judgment on the grounds that the plaintiff's claim was time barred. The court further declined jurisdiction of the pendent state claims.

On February 13, 1986, Shaver commenced an action in the Milwaukee County Circuit Court, which complaint alleged breach of contract, negligent termination, and a violation of the Wisconsin Fair Employment Practices Act. The defendant petitioned for removal to this court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. On June 6, 1986, the defendant

moved for summary judgment on all three claims in the complaint. A scheduling conference was conducted shortly thereafter, during the course of which counsel for the plaintiff requested a period of time in which to pursue discovery on the summary judgment motion. The court granted the plaintiff's request and the matter is now fully briefed and ripe for decision.

## W.F.E.A.

The defendant has effectively argued that the plaintiff's state law age claim, arising under the Wisconsin Fair Employment Act, Wis.Stat. §§ 111.31 et seq. ought to be dismissed because the WFEA does not provide a private cause of action. The plaintiff has conceded that it does not and states that he is now actively pursuing his case before the Equal Rights Division. Accordingly that claim will be dismissed.

## NEGLIGENCE

The defendant next argues that Wisconsin courts do not recognize negligence as a cause of action in an employment termination case. The defendant relies principally upon the Wisconsin Supreme Court decisions in *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834 (1983) and *Landwehr v. Citizens Trust Co.,* 110 Wis.2d 716, 329 N.W.2d 411 (1983) and the Wisconsin Court of Appeals decision in *Dvorak v. Pluswood, Wisconsin,* 121 Wis.2d 218, 358 N.W.2d 544 (Ct.App. 1984) for the proposition that Wisconsin courts have foreclosed negligence claims in employment termination cases.

*Landwehr* addressed a plaintiff's dilemma who wishes to maintain that a contract has been performed improperly, i.e. whether his action sounds in contract or tort. The court noted the legal anomaly in which an action for tort may lie when misperformance of a contract results in foreseeable unreasonable risk of harm to the plaintiff and the proposition that foreseeable injury or damage exists in virtually all potential breaches of contract. The court distinguished *Colton v. Foulkes,* 259 Wis. 142, 47 N.W.2d 901 (1951) on the basis that the defendant had a duty independent of the contract. The father of the plaintiff in *Landwehr* was found not to have a duty to make a will and thus his failure to execute it properly did not form the basis for an action sounding in tort.

■ In *Brockmeyer,* the Wisconsin Supreme Court adopted a narrow public policy exception to the employment at will doctrine wherein an action would lie for a plaintiff-employee who maintains that his wrongful discharge "violates a clear mandate of public policy." *Brockmeyer,* 113 Wis.2d at 574, 335 N.W.2d 834. The court immediately resolved the question of whether such an action should be maintained in tort or in contract and concluded "that a contract action is most appropriate for wrongful discharges. The contract action is essentially predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy. Tort actions cannot be maintained." *Id.* at 575–76, 335 N.W.2d 834. The Wisconsin Court of Appeals in *Dvorak v. Pluswood, Wisconsin, Inc.,* 121 Wis.2d 218, 358 N.W.2d 544 (1984) employed both *Landwehr* and *Brockmeyer* in concluding that a termination case is not actionable in tort because the employer had no duty to its employee independent of the employment contract and thus the award for punitive damages was reversed.

The plaintiff denies that he is attempting to end-run the clear language in *Brockmeyer* and that his claim is not that of a tortious bad faith employment discharge. "Our claim is, rather, that having undertaken the task of differentiating between its employees for purposes of assessing who shall survive the Woolco lay-off at the CAO and who shall not, the defendant obligated itself to carry out that undertaking with reasonable care, including the careful application of the principles of lay-off set forth in its employee handbook." Plaintiff's brief at 2–3 (footnote omitted). The court views the plaintiff's argument as being a distinction without substance.

The plaintiff would next have the court read *Wandry v. Bull's Eye Credit,* 129 Wis.2d 37, 384 N.W.2d 325 (1986) and con-

clude that the public policy of Wisconsin, as expressed statutorily, would be offended if he is not permitted to proceed in negligence. In *Wandry* the plaintiff had been fired because she refused to reimburse her employer for a bad check that she had cashed, not realizing that the check had been stolen and the endorsement forged. She allegedly had only cashed the check after her supervisor had approved it and she was acting in accordance with her employer's usual and customary procedures. Wisconsin Statute section 103.455 prohibits employers from making deductions from the wages due or earned of its employees unless it has first been determined that the loss experienced by the employer has been caused by the employee. The *Wandry* court concluded that section 103.455 "articulates a fundamental and well defined public policy proscribing economic coercion by an employer upon an employee to bear the burden of a work-related loss when the employee has no opportunity to show that the loss was not caused by the employee's carelessness, negligence or willful misconduct." *Id.* at 47, 384 N.W.2d 325. Thus, although the employer did not technically violate the statute by deducting wages, it terminated the employment of the plaintiff for not reimbursing it from her own assets.

█ Shaver attempts to make the startling transition, which would have this court recognize the comparative negligence statute, section 895.045 Wis.Stats., as stating a fundamental Wisconsin public policy which was somehow violated by the plaintiff's termination. If the reader has difficulty in following this argument, he or she is not alone. It is the court's understanding that the public policy underlying the comparative negligence statute is that

a contributorily negligent plaintiff will not be barred from maintaining his action unless his negligence was greater than the negligence of the defendant, even though damages will be reduced. By no interpretation of the complaint can the court conclude that the defendant's decision to lay off the plaintiff violated the public policy behind the comparative negligence statute. As to the plaintiff's argument that the cases recognizing an exception to the employment at will doctrine should not be read "*sub silentio* to overrule preexisting general principals of comparative negligence law," the court can only state that it is unaware of any authority which would have permitted the plaintiff to maintain his action in negligence prior to *Brockmeyer.* The court further rejects *Chamberlain v. Bissell, Inc.*, 547 F.Supp. 1067 (W.D.Mich. 1982) as authority applicable under *Erie* in Wisconsin.

## BREACH OF CONTRACT

The plaintiff's claim sounding in breach of contract is on somewhat firmer footing. In *Ferraro v. Koelsch*, 124 Wis.2d 154, 368 N.W.2d 666 (1985), the Wisconsin Supreme Court joined several other jurisdictions[1] which have recognized that an employee handbook may, under certain circumstances, constitute an implied or express employment contract limiting the employer's right to terminate at will, i.e. for any reason or for no reason at all.

On Shaver's application form, which is not dated but presumably was completed in 1962, the plaintiff signed his name directly beneath the following language:

On my engagement by F.W. Woolworth Co., this application is evidence that I agree to conform to the rules and regula-

1. *See for example, Fletcher v. Wesley Medical Center*, 585 F.Supp. 1260 (D.Kan.1984); *Leikvold v. Valley View Community Hospital*, 141 Ariz. 544, 688 P.2d 170 (1984) (en banc) *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311, 171 Cal. Rptr. 917 (1981); *Salimi v. Farmers Insurance Group*, 684 P.2d 264 (Colo.Ct.App.1984); *Jackson v. Minidoka Irrigation District*, 98 Idaho 330, 563 P.2d 54 (1977); *Larrabee v. Penobscot Frozen Foods, Inc.*, 486 A.2d 97 (Me.1984); *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980); *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn.1983); *Sinnett v. Hie Food Products, Inc.*, 185 Neb. 221, 174 N.W.2d 720 (1970); *Southwest Gas Corp. v. Ahmad*, 99 Nev. 594, 668 P.2d 261 (1983); *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982); *Langdon v. Saga Corp.*, 569 P.2d 524 (Okla.Ct.App.1976); *Osterkamp v. Alkota Manufacturing, Inc.*, 332 N.W.2d 275 (S.D.1983); *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 685 P.2d 1081 (1984) (en banc).

tions of F.W. Woolworth Co., that my engagement can be terminated at any time by F.W. Woolworth Co., I being likewise at liberty to so terminate it. Any agreement entered into between the company and the applicant is predicated upon the truthfulness of the statements herein contained.

It appears uncontroverted that the CAO Employee Handbook then in effect contained the following passage: "This booklet will assist you in understanding our policies and procedures, and will explain many aspects of your duties in the Central Accounting Office. It will tell you what we expect from you, and what you may expect from us." There is no language in this handbook concerning seniority and its effect upon layoff.

On March 16, 1982, Shaver signed an acknowledgement form verifying his receipt of a copy of the new employee handbook which contained "details of benefits and policies for the employees of the F.W. Woolworth Central Accounting Office." In its introductory statement, the booklet provided as follows: "This booklet will assist you in understanding our policies and procedures, and will explain many aspects of your duties in the Central Accounting Office. It will tell you what we expect from you, and what you may expect from us."

The 1982 handbook, however, in addition to listing the rules and benefits concomitant with being a CAO employee, contained the following seniority section:

Your seniority is important to you and to the Central Accounting Office and it means the length of time you have worked for us since your most recent date of hire. Seniority, along with ability and performance, is an important factor for job transfer and promotion opportunities. In the history of the CAO the need to reduce the number of employees has occurred on rare occasion—and even then only a few employees were affected. It is important for you to know that if a reduction of staff should be necessary, layoff and recall after layoff will be determined on the basis of seniority and an employee's skill and abil-

ity to do the available work. Where the factors are relatively equal among several employees, those with the greatest seniority will be given preference over those employees with less seniority.

The handbook's penultimate paragraph contains the following caveat: "These are today's policies and rules—it is safe to say, our practice is to continually review and revise them as needed—always keeping in mind the needs of the people who make up the organization."

The defendant bases his argument that summary judgment ought to be granted on the breach of contract claim on three grounds. First that the CAO handbook did not constitute a contract because performance under the handbook was optional with the employer and did not change the nature of the at will employment relationship. Second, that if the handbook constituted a contract, it was modified by the employer when it issued its notice of layoff and accepted by the plaintiff when he continued to work at the CAO and accepted the layoff benefits package, and third, that if the handbook is found to be an employment contract, *Ferraro v. Koelsch* ought not to be applied retroactively.

■ While the court is not prepared to state that any one of the circumstances surrounding the plaintiff's layoff would be sufficient to defeat the defendant's summary judgment motion, I must find that the combination of factors mandate the grant of summary judgment. First of all, the employee handbook did not change the employment at will relationship between the parties. Woolworth remained free to terminate Shaver's employment at any time for any reason or for no reason at all as long as the reason itself was not illegal. The Seniority Section in the handbook referred only to layoffs and not to discharges. Second, the defendant did reserve the right to review and revise the policies and rules in the handbook as it saw fit. Again it must be stressed, however, that this court is not holding that such language of disclaimer by and of itself will be sufficient to remove an employee hand-

**247**

book from the ambit of the *Ferraro* decision.

Finally, the court is persuaded by the fact that at the meeting on October 27, 1982, Shaver was given a packet of materials including the announcement of the layoffs, an explanation of the income continuation program which was designed to supplement or extend unemployment compensation while the laid off employees were seeking other jobs, the program for continuation of other benefits, such as insurance and bonuses, and an explanation of the out-placement services to which the laid off employees would have access. In a document entitled "Questions and Answers Related To Woolco Phase Out" the defendant made it clear that the layoffs were not based upon seniority.

Q. Why has my employment with Woolworth/Woolco been terminated and not someone else? I have more seniority than others who are staying on. I've done my job(s) well.

A. The problem is not just your job, but involves management, staff and operating jobs across the country. Everyone was carefully reviewed for the jobs that will remain. The decisions were made by management based on their knowledge of future job requirements and the people in the organization. Individual decisions were based on the best combination of job knowledge, performance track record, breadth and depth of experience, as well as company service. Regretable, (sic) there just aren't enough jobs available in the new organization to hold on to all of our competent people.

The plaintiff accepted the layoff benefits and continued to work for the defendant until June 30, 1983. It would thus appear to the court that the defendant reserved the right to modify this particular term of employment, did modify the seniority section and that by accepting the layoff package and continuing to work for the defendant the plaintiff accepted the modification. This case is thus distinguishable from *Bartinikas v. Clarklift of Chicago North,*

*Inc.,* 508 F.Supp. 959 (N.D.Ill.1981) in which the court found that the employer attempted to modify the employment contract but that the unilateral modification was specifically rejected by the employee. Accordingly, and for all the foregoing reasons,

IT IS ORDERED that the defendant's motion for summary judgment be and hereby IS GRANTED.