**Bernard BEAM, Plaintiff–Appellant,**

v.

**IPCO CORPORATION, d/b/a Sterling Optical, Defendant–Appellee.**

No. 87–1194.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1987.

Decided Jan. 29, 1988.

As Amended March 1, 1988.

Roger L. Imes, Hale, Skemp, Hanson & Skemp, LaCrosse, Wis., for plaintiff-appellant.

Frank C. Morris, Jr., Epstein, Becker Borsody & Green, P.C., Washington, D.C., for defendant-appellee.

Before CUMMINGS, CUDAHY and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

Bernard Beam brought this diversity action against his former employer, IPCO Corporation ("IPCO"), seeking back pay and other monetary damages for wrongful discharge. The district court granted IPCO's motion to dismiss for failure to state a claim under which relief could be granted.

On appeal Beam argues that the district court applied an overly narrow interpretation of Wisconsin's public policy exception to the employment at will doctrine. IPCO seeks an order affirming the dismissal of Beam's suit and directing Beam to pay its costs and fees on appeal. We conclude that Beam's consultation with his attorney was not protected by any clear and compelling Wisconsin policy and was at most consistent with, rather than compelled by, any policy that could even arguably have applied. We therefore affirm the district court's dismissal of the complaint. We decline to impose sanctions on Beam because there was a colorable, though ultimately incorrect, argument for application of the unjust discharge remedy.

## I.

In November 1981, IPCO hired Beam to manage an optical store, an outlet in the Sterling Optical chain, in La Crosse, Wisconsin. In January 1985, Beam received a letter from his supervisor reprimanding him for alleged deficiencies in his work. Concerned about his position and convinced that his supervisor's charges were unfounded, Beam consulted an attorney. At his attorney's request, Beam disclosed some of his outlet's financial data. Beam's attorney then wrote a letter to Beam's supervisor in which he used the financial data to argue that Beam's performance had been mischaracterized in the supervisor's letter. Within a week, IPCO sent a letter to Beam's attorney and a mailgram to Beam indicating that Beam had been fired for disclosing confidential company information.

Beam filed this wrongful discharge action in July 1986, alleging that IPCO had fired him for consulting with an attorney. Beam maintained that the discharge violated a clear Wisconsin public policy, reflected in various provisions of the state's statutes and constitution, of protecting citizens' rights to take their legal problems to attorneys. When IPCO fired him in violation of this policy, according to Beam, it became liable under the unjust discharge remedy recognized in *Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 335 N.W.2d 834 (1983), and subsequent Wisconsin cases.

In January 1987, the district court granted IPCO's motion to dismiss Beam's complaint for failure to state a claim. On appeal, Beam seeks reversal and reinstatement of his complaint. IPCO argues that the district court's dismissal should be affirmed and that Beam should be ordered to pay IPCO's costs and attorney's fees.

## II.

Before considering the legal sufficiency of Beam's claim, it would be useful to clarify the procedural posture of this case. Dismissal for failure to state a claim upon which relief can be granted is appropriate where a review of the complaint, taking all factual allegations in the complaint as true, reveals that no viable cause of action exists. *Greene v. Finley*, 749 F.2d 467, 468 (7th Cir.1984). If "matters outside the pleading are presented to and not excluded by the court" in connection with a motion to dismiss for failure to state a claim, the district court is required to treat the motion to dismiss as a summary judgment motion. *National Family Ins. Co. v. Exchange Nat'l Bank*, 474 F.2d 237, 239 (7th Cir.), cert. denied, 414 U.S. 825, 94 S.Ct. 129, 38 L.Ed.2d 59 (1973); Fed.R.Civ.P. 12(b). Failure to make this conversion and to provide litigants with appropriate notice to permit supplementation of the record can constitute reversible error. *See, e.g., Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972).

The record upon which the district court decided IPCO's motion to dismiss included more than the pleadings and supporting briefs. Both Beam and IPCO submitted documentary exhibits to the district court: Beam's complaint included a copy of the February 20, 1985 mailgram notifying him of his termination; IPCO's memorandum in support of its motion to dismiss included a copy of the January 14, 1985 letter of reprimand from Beam's supervisor to Beam.[1] Beam's exhibit poses no problem under Rule 12(b) because the district court is entitled to consider exhibits attached to the complaint as part of the pleadings. *See Griswold v. E.F. Hutton & Co.*, 622 F.Supp. 1397, 1402–03 (N.D.Ill. 1985); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 at 593 (1969). Under a strict interpretation of Rule 12(b), however, the district court may have erred by not expressly rejecting IPCO's exhibit or, in the alternative, con-

---

1. Copies of two additional documents, the letter that Beam's counsel sent to IPCO contesting the reprimand and the return letter from IPCO's counsel to Beam's attorney stating that IPCO had fired Beam, were attached to Beam's memorandum in opposition to the motion to dismiss.

Before the district court, IPCO requested that these documents be sealed to prevent their affecting the district court's consideration of the motion to dismiss. Beam acceded to this request. Both of these documents, however, have been included in the record on appeal.

verting the motion into a summary judgment motion. None of the facts contained in the letter of reprimand, however, played any part in the district court's decision approving the motion to dismiss. IPCO did not contend, and the district court did not hold, that Beam was fired for the deficiencies described in the letter. The district court's evaluation of the motion to dismiss turned instead on whether IPCO was permitted to fire Beam for his interactions with his counsel. The district court's failure to provide any formal indication that it excluded IPCO's exhibit from consideration does not, under these circumstances, preclude us from reviewing the district court's order as an appeal of a motion to dismiss.[2]

### III.

In reviewing the dismissal of Beam's complaint, we ask whether an employee fired for consulting an attorney about an employment dispute has a legal remedy under the public policy exception to Wisconsin's employment at will doctrine.[3] Under the at will doctrine, an employer could fire an employee who lacked explicit con-

tractual protections " 'for good cause, for no cause, or for cause morally wrong.' " *Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 567, 335 N.W.2d 834, 837 (1983) (quoting *Payne v. Western & Atl. R.R.*, 81 Tenn. 507, 519–20 (1884), *overruled on other grounds, Hutton v. Watters*, 132 Tenn. 527, 179 S.W. 134 (1915)). Since *Brockmeyer*, Wisconsin has recognized a narrow public policy exception to the at will rule. In delineating the boundaries of the discharge remedy, the court in *Brockmeyer* attempted to balance employers' needs for "sufficient flexibility to make needed personnel decisions" against employees' "job security interests" and the public interest in protecting employee actions that advance "well established public policies." *Id.* at 574, 335 N.W.2d at 841. It therefore limited the range of policies under which an employee might claim this protection to "stated public polic[ies] as reflected in the constitution and statutes of Wisconsin." *Id.* at 578, 335 N.W.2d at 842. Under this standard, the court held that Charles Brockmeyer, a supervisory employee who had been reprimanded for taking an un-

---

**2.** Our determination to review this case as a grant of a motion to dismiss affects only the form of this decision. We would reach the same outcome based on very similar reasoning if we treated this as a case in which the motion to dismiss was effectively converted into a summary judgment motion without proper notice to the parties. While notice that a motion to dismiss has been converted to a summary judgment motion should be given, we have held that "the failure to do so does not necessarily mandate reversal where nothing else could have been raised to alter the entry of summary judgment." *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 281 (7th Cir.1986); *see Farries v. Stanadyne*, 832 F.2d 374, 378 (7th Cir.1987); *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 271–72 (7th Cir.1986); *see also Romero v. International Terminal Operating Co.*, 358 U.S. 354, 357 n. 4, 79 S.Ct. 468, 472 n. 4, 3 L.Ed.2d 368 (1959). In light of our conclusion that Beam's complaint does not rely on a valid legal theory, it is clear that further development of the facts would not have helped Beam.

**3.** The district court stated that Beam was discharged for releasing confidential information, not for consulting an attorney. Slip op. at 4–5, No. 96–C–489–S (W.D.Wis. Jan. 12, 1987). This view of IPCO's action contradicts Beam's insistence in his complaint and briefs that IPCO's confidentiality concerns were pretextual and that Beam was fired solely for having consulted

with his attorney. The district court's view is supported, however, by the February 20, 1985 mailgram from IPCO that Beam attached to his complaint. *Compare* Complaint at 2 ("IPCO Corporation states as its sole cause for termination the fact that plaintiff consulted with an attorney in an attempt to answer the allegations against him") *with* Complaint at Exhibit A (Feb. 20, 1985 Mailgram from IPCO to Beam) ("You are immediately terminated from our employment for just cause based upon breaking your duty of confidentiality by releasing sensitive financial information to persons outside the company."). The inconsistency between Beam's complaint and the exhibit raises the question whether, under these circumstances, the district court was required to accept Beam's account of IPCO's motives as a well pleaded factual contention. *See, e.g., Coates v. Illinois State Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir.1977) (court "will take all well-pleaded facts as true, but will not strain to find inferences favorable to plaintiffs"); *see also Quiller v. Barclays American Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir.1984), *cert. denied*, 476 U.S. 1124, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986). We need not reach this question in view of our conclusion that even a well-pleaded claim of termination for consulting a lawyer would not state a claim under Wisconsin's unjust discharge remedy.

scheduled vacation, smoking marijuana with his subordinates and having an affair with his secretary, had failed to show that his discharge violated policies underlying Wisconsin statutes protecting business reputations and workers' pursuit of employment. The court also found no factual support for Brockmeyer's contention that he had been fired for declaring his intention to answer truthfully if called to testify in a sex discrimination suit brought by his former secretary.

In the two unjust discharge cases that it has decided since *Brockmeyer*, the Wisconsin Supreme Court has adjusted the balance between preserving employers' and employees' freedom to bargain over discharge protections on the one hand and promoting worker job security and public policies on the other. *Wandry v. Bull's Eye Credit Union*, 129 Wis.2d 37, 384 N.W.2d 325 (1986), involved the termination of a credit union cashier for refusing to reimburse her employer for losses resulting from a bad check that she claimed to have accepted with the approval of her supervisor. The court reversed the dismissal of the cashier's complaint, finding that the complaint had properly described a discharge in violation of a clear public policy against the use of "coercive economic power to shift the burden of a work related loss from the employer to the employee." Although the express language of the relevant statute, Wis.Stat.Ann. 103.455 (West 1974), does not address discharges—it speaks only to deductions from wages imposed without an admission or objective determination that the employee was at fault—the court held that "[t]he public policy of a statute may be invoked in contexts outside the precise reach of the statute." *Id.* at 46–47, 384 N.W.2d at 329.

Any impression that *Wandry* presaged a broadening of *Brockmeyer*'s "narrow public policy exception" was dispelled by the Wisconsin Supreme Court's most recent unjust discharge decision. In *Bushko v. Miller Brewing Co.*, 134 Wis.2d 136, 396 N.W.2d 167 (1986), Stephen Bushko, a supervisor at a container plant, claimed that he had been fired in violation of clear public policies reflected in statutory and state constitutional provisions concerning industrial safety and free speech. Bushko's dismissal was ostensibly for complaining about his employer's practices with respect to plant safety, hazardous wastes and "honesty." The court held that Bushko could not get to the jury by alleging that he had been dismissed for actions merely "consistent with" public policies. The cause of action set out in *Brockmeyer*, the court held, "requires that the discharge be for refusing a command to violate a public policy as established by a statutory or constitutional provision." *Bushko*, 134 Wis.2d at 141, 396 N.W.2d at 170.

*Bushko* seemed to retract some of the language in *Brockmeyer* as well as to nullify *Wandry*'s apparent expansion of the public policy exception. However, Justice Steinmetz, who authored the majority opinions in both *Bushko* and *Brockmeyer* (as well as the dissent in *Wandry*), went to some length to reconcile *Bushko* with both *Brockmeyer* and *Wandry*. *Brockmeyer* referred in one passage to the protection of conduct "consistent with a clear and compelling public policy." *Brockmeyer*, 113 Wis.2d at 574, 335 N.W.2d 841. *Bushko* treated this language as an imprecise restatement of *Brockmeyer*'s more specific requirement that an employee demonstrate that the discharge resulted from a refusal "to act in an unlawful manner." *Bushko*, 134 Wis.2d at 140–41, 396 N.W.2d at 169–70 (quoting *Brockmeyer*, 113 Wis.2d at 573, 335 N.W.2d at 840). Bringing *Wandry* into line with the holding in *Bushko* presented a more difficult problem. The *Bushko* majority avoided overturning *Wandry* by identifying two distinct inquiries involved in the application of the unjust discharge remedy: the specification of underlying policies and the determination whether the discharge resulted from an employer's refusal to violate such a policy.

*Wandry*, according to the decision in *Bushko*, extended the discharge remedy by taking into account the spirit as well as the letter of statutory and constitutional provisions, but retained the requirement "that for a wrongful discharge the employee be

required to act contrary to the law, a statutory or constitutional provision." *Bushko,* 134 Wis.2d at 143–44, 396 N.W.2d at 170–71 (construing *Wandry,* 129 Wis.2d at 46–47, 384 N.W.2d at 329–30). Bushko's claim failed, according to the majority, not because he relied on a broad interpretation of the policies underlying Wisconsin statutes, but because he failed to show that he was discharged for refusing to violate, rather than for merely acting in a manner consistent with, those policies.

■ Beam's complaint, even if accepted as factually correct, fails to meet either the "clear and compelling policy" or the "refusal to violate" requirement set forth in *Bushko.* We agree with the district court that Beam has not identified any clear and compelling public policy—even under *Wandry*'s relatively expansive approach to the identification of underlying policies—that was violated by IPCO's action. Beam argues that his discharge violated policies underlying (1) article 1, section 9, of the Wisconsin Constitution, which guarantees "a certain legal remedy for all injuries or wrongs," (2) sections 108.01 and 108.09(8) of the Wisconsin Code, which provide for unemployment compensation and guarantee a right of representation at unemployment compensation hearings, and (3) section 905.03 of the Code, which codifies the attorney-client privilege.

Article 1, section 9, as Beam acknowledges, protects citizens' access to the courts. Beam has presented no basis for his suggestion that protecting access to the courts entails allowing any employee who faces termination to obtain just cause protections simply by consulting a lawyer at the first sign of trouble. *See Kavanagh v. KLM Royal Dutch Airlines,* 566 F.Supp. 242, 244 (N.D.Ill.1983) (rejecting argument that firing an employee for consulting an attorney violates Illinois public policy exception).

The policies underlying the Wisconsin unemployment compensation statute must also be confined to a narrower ambit than Beam suggests. The Wisconsin unemployment compensation law responds to the social costs of unemployment by establishing a mandatory insurance scheme. There is no indication that the state legislature intended any greater restrictions on the availability of at will employment contracts than the insurance scheme itself imposes. Extending just cause protections to any employee with the foresight to consult a lawyer about unemployment compensation prior to termination would have the same effect as a policy requiring just cause if an employee has consulted a lawyer regarding any other job related dispute: It would virtually foreclose employees and employers from entering at will contracts by giving employees an indefeasible right to claim just cause protections. This result would plainly conflict with Wisconsin's announced intention to provide a "narrow public policy exception" to the at will rule.

Finally, we find no policy to support Beam's claim in Wisconsin's attorney-client privilege. Wisconsin's codification of the attorney-client privilege protects the confidentiality of clients' communications with counsel. Beam, however, alleges that IPCO objected not to the confidential nature of Beam's relationship but to the existence of the relationship. Even under *Wandry,* the connection between the purpose of the privilege and Beam's injury is too attenuated to meet the "clear and compelling" standard. In sum, we do not believe that any of the provisions identified by Beam reflect a clear and compelling policy against an employer's firing an employee for consulting an attorney about an employment dispute.

Beam's claim also fails because even if there were a clear and compelling public policy concerning employees' rights to consult attorneys about employment disputes, he has failed to demonstrate that his actions were required by, rather than "merely consistent with," that policy. *Bushko,* 134 Wis.2d at 141, 396 N.W.2d at 170. *Bushko* unmistakably requires employees seeking recovery for wrongful discharge to show that their employers required actions "contrary to law." Beam has not attempted to make this showing. Instead Beam relies in his opening brief on a misleading discussion of *Bushko* (a matter we pursue

below) and in his reply brief on the vague statement that "[t]here are arguments and counter arguments to be made for the reading of those three cases, and the cases are not, if closely read, entirely consistent." Reply Brief of Plaintiff–Appellant Bernard Beam at 1. This court's mandate in diversity cases, however, does not permit us to disregard a clear statement of the law by a state's highest court in order to indulge our own views of consistency or sound policy. *Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 71–80, 58 S.Ct. 817, 818–23, 82 L.Ed. 1188 (1938); *Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 354 (7th Cir.1982). *Bushko*, the Wisconsin Supreme court's most recent encounter with the public policy exception, unequivocally requires employees seeking redress to demonstrate that they were discharged for refusing to violate a public policy. Beam has failed to make this showing.[4] His action was therefore appropriately dismissed.

## IV.

We must also consider whether Beam should bear IPCO's costs and attorney's fees on appeal. IPCO asserts that Beam's appeal restates arguments that were decisively rejected by the district court without attempting to refute that court's analysis and that Beam's opening brief misrepresents the holding in *Bushko*. The company asserts that this behavior should subject Beam to sanctions under Rule 38 of the Federal Rules of Appellate Procedure, which penalizes "frivolous" appeals, under 28 U.S.C. § 1912, which deals with "unnecessary delay," or under 28 U.S.C. § 1927, which authorizes sanctions for "unreasonably and vexaciously" multiplying proceedings.

If sanctions depended entirely on the abstract merits of an appeal—on whether a litigant could entertain some reasonable hope of reversal—we would have little difficulty denying sanctions in this case. Though Beam has failed to meet either the "clear and compelling public policy" requirement or the "refusal to violate" requirement of *Bushko*, his argument was not inherently frivolous in either respect. We cannot say that Wisconsin law "removed every colorable basis in law for Beam's position." *Reid v. United States*, 715 F.2d 1148, 1154 (7th Cir.1983).

The existence of a plausible argument, however, does not entirely resolve the sanctions issue. We must also consider the conduct of the appeal by Beam's counsel. We are troubled, in particular, by counsel's apparent attempt to mislead this court as to the holding in *Bushko*. The relevant portion of appellant's initial brief to this court states:

> The recently published case of *Bushko v. Miller Brewing Co.* again thoroughly discusses the tests for a cause of action for wrongful discharge. The concurring opinion of Justice Abrahamson is particularly instructive. At Page 143 of that opinion she states:
>
> > "This court has stated several guidelines to determine [sic: 'for determining' in original] whether an employee has a claim for wrongful discharge under the *Brockmeyer* rule. One guideline is that a discharge is actionable when an employee is discharged for refusing to violate a statute or constitutional provision (the 'refusal guideline'). *A second guideline is that a discharge is actionable when an employee is discharged for actions consistent with a clear and compel-*

---

**4.** It is possible to cast Beam's claim in the form of a refusal to desist from consulting an attorney. The *Bushko* majority, in fact, reconciles *Wandry* in this manner, characterizing the cashier's action as a refusal to reimburse her employer without an impartial adjudication of fault. *Bushko*, 134 Wis.2d at 143–44, 396 N.W.2d at 170–71. The "refusal to violate" formulation, as the *Bushko* dissent points out, can be adapted to a broad range of public policy claims, including Bushko's, which could be said to involve a "refus[al] to remain silent about safety violations." *Id.* at 155 n. 6, 396 N.W.2d at 177 n. 6. While the contours of the "refusal to violate" requirement are somewhat unclear and *Bushko* for this reason did not preclude Beam from making a good faith argument in this form, it seems plain to us that *Bushko* was intended to confine *Wandry* as narrowly as possible. We do not therefore believe that Beam's claim succeeds if his actions are recharacterized as a refusal to violate a public policy.

*ling public policy embodied in a statute or constitution.* Each of the guidelines is a different but equally valid characterization of the kind of discharge that is actionable. Each is a manifestation of the kind of discharge that 'is contrary to a fundamental and well-defined public policy' and therefore the basis for a wrongful discharge · action under *Brockmeyer."* (Emphasis supplied.) [Punctuation corrected to conform to original.]

The cause of action alleged in Mr. Beam's complaint falls squarely within this second guideline.

Brief of Plaintiff–Appellant Bernard Beam at 16–17 (citation omitted).

This excerpt from a minority opinion neglects to mention that the *majority* had rejected the "second guideline." The concurring opinion quoted in the brief thus disagreed emphatically with the majority position on the point most relevant to the instant case. Taken in context, the quoted excerpt is "particularly instructive" only in the sense that it clarifies the legal theory that the majority rejected. This hardly seems to be the instruction we were intended to draw from appellant's brief.

▬ Although we take an extremely dim view of this futile attempt to mislead the court, we decline to award fees and costs to IPCO. By misrepresenting rather than distinguishing *Bushko,* Beam's counsel performed a greater disservice to this court and his client than to IPCO. A more effective presentation of appellant's position might well have increased rather than decreased IPCO's legal expenses. We are generally reluctant to award fees and costs to opposing counsel for inadequate argumentation of a potentially meritorious appeal, *e.g., Magnus Electronics, Inc. v. La*

*Republica Argentina,* 830 F.2d 1396, 1405 (7th Cir.1987), and decline to do so in this case.[5] We note, however, that lawyers owe a duty of candor to the tribunal. Counsel for appellant would be well advised to observe that violations of this duty can lead to sanctions even more severe than payment of an opponent's fees and costs.[6]

## V.

For the reasons stated above, we affirm the judgment of the district court and decline to award sanctions.

AFFIRMED.

---

**5.** Our holding here should not be taken to indicate that disingenuous arguments can never provide a basis for sanctions. Misrepresentations of controlling law could postpone resolution of the real issues, causing "unnecessary delay" (28 U.S.C. § 1912) or "unreasonably multiplying the proceedings" (28 U.S.C. § 1927). Such arguments may also provide evidence of bad faith sufficient to satisfy the second part of the two-part test for Rule 38 sanctions discussed in *Reid v. United States,* 715 F.2d at 1154–55.

*See also Spiegel v. Continental Illinois Bank,* 790 F.2d 638, 650–51 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986).

**6.** We direct counsel's attention to former Rules 20.34(e) and 20.36(1)(e) of the Wisconsin Supreme Court Rules and to current Rules 20:3.-3(a)(1) and (3), which took effect on January 1, 1988.