MURPHY, District Judge.
I. Introduction
In this case, Petitioner Florence Crowe, the widow of Harold D. Crowe, a coal *437 miner formerly employed by Respondent Zeigler Coal Company (“Zeigler”), seeks review of a decision of the Benefits Review Board (“BRB”) of the United States Department of Labor (“DOL”) affirming a decision of an Administrative Law Judge (“ALJ”) to modify an award of benefits to Mr. Crowe under the Black Lung Benefits Act (“BLBA”), 30 U.S.C. §§ 901-45. Named as Respondents in addition to Zeigler are Travelers Companies (“Travelers”), the owner of a surety bond that covers Mr. and Mrs. Crowe’s claim against Zeigler, and the Director of the DOL’s Office of Workers’ Compensation Programs (“OWCP”). In 2004 Zeigler was liquidated in bankruptcy, but Travelers made no application to intervene in the modification proceeding giving rise to the petition in this case until 2008, despite having been on notice of its interest in the proceeding since 2005. The modification proceeding should have been dismissed when Zeigler ceased to be a real in interest to serve as the proponent of modification, and Zeigler’s surety, Travelers, which might have served as a real in interest in support of modification, failed to seek timely intervention in the modification proceeding. Accordingly, we reverse the BRB’s decision and remand this case for reinstatement of the award of benefits to Mr. Crowe.
II. Background and Procedural History
As is not infrequently the case in proceedings under the BLBA, the procedural history of this matter is both lengthy and convoluted. See, e.g., Peabody Coal Co. v. Director, OWCP, 165 F.3d 1126, 1127 (7th Cir.1999) (describing a twenty-four-year-old black lung case as “typically protracted”). In 1981, shortly after retiring from his job with Zeigler, Mr. Crowe filed a claim for benefits with the DOL in which he asserted that he suffered from pneumo-coniosis, commonly known as “black lung” disease. At the time Mr. Crowe filed his 1981 claim he was thirty-six years old and had worked as a miner for approximately five years. Subsequently the claim was denied by the DOL as having been abandoned.
In 1990 Mr. Crowe filed a new application for black lung benefits. The medical evidence supporting Mr. Crowe’s 1990 claim included: the deposition testimony and treatment history of Dr. Curtis Krock, who had been Mr. Crowe’s treating physician in the late 1970s and early 1980s; medical records of various physicians who treated Mr. Crowe in the 1980s and 1990s for respiratory ailments; and evidence specifically developed in connection with the claim. Dr. Krock, a board-certified practitioner in internal medicine and pulmonary disease, gave a deposition in connection with a previous claim by Mr. Crowe against Zeigler with the Illinois Industrial Commission in which Dr. Krock testified that Mr. Crowe had a history of recurrent exposure to rock dust. Dr. Kroek’s main diagnosis was bronchitis related to exposure to rock dust, although Dr. Krock also found that Mr. Crowe was an occult asthmatic.
Dr. Krock acknowledged that, although it was clear that Mr. Crowe had bronchitis, the diagnosis of asthma was somewhat more problematical because such a diagnosis typically requires a showing of reversibility, meaning that the patient’s pulmonary deficit can be improved through medical intervention. However, Dr. Krock testified that he was satisfied with his diagnosis of asthma because, in examining Mr. Crowe, sometimes Dr. Krock heard Mr. Crowe wheezing and sometimes he did not. Dr. Krock also testified that Mr. Crowe’s bronchitis and asthma were industrially-related and that Mr. Crowe was disabled.
*438 In 1994, on appeal from the denial of Mr. Crowe’s claim for benefits by a deputy commissioner, ALJ Donald Mosser affirmed the denial of Mr. Crowe’s claim. In his order denying benefits, ALJ Mosser denied a request by Zeigler for remand of the case to the District Director for the purpose of developing additional evidence, noting that the record in the case had been left open for a considerable time to allow Zeigler to develop additional medical evidence, yet Zeigler had failed to develop any such additional evidence. On appeal to the BRB, the BRB reversed ALJ Mos-ser’s denial of benefits, finding that Dr. Krock’s diagnosis of Mr. Crowe as suffering from industrially-related disabling asthmatic bronchitis with an incapacitating cough may have constituted a diagnosis of legal pneumoconiosis.
On remand from the BRB, ALJ Mosser found in a 1995 opinion that Mr. Crowe was entitled to black lung benefits dated from July 1,1981, the onset of Mr. Crowe’s total disability due to black lung, and that such benefits should be augmented for Mr. Crowe’s wife and daughter for the periods during which Mr. Crowe’s wife and daughter qualified as dependents. Zeigler then moved for reconsideration, asserting that Mr. Crowe’s 1990 claim was barred because Mr. Crowe’s 1981 claim for benefits had been dismissed and because Mr. Crowe had failed to prove a material change in his condition such as to permit him to bring a new claim for benefits. In 1996 ALJ Mosser vacated the award of benefits to Mr. Crowe, and the 1996 order was affirmed by the BRB. Accordingly, Mr. Crowe petitioned this Court for review of the BRB’s decision.
This Court held that because the dismissal of Mr. Crowe’s 1981 claim for benefit was procedural and not a decision on the merits, Mr. Crowe did not need to prove a material change in his condition between his 1981 claim and his 1990 claim. See Crowe v. Director, OWCP, 226 F.3d 609, 613-14 (7th Cir.2000). The Court pointed out that res judicata or claim preclusion typically does not bar a claim where a finding of preclusion is manifestly unjust. See id. Also, the Court noted that Mr. Crowe’s failure to prosecute his 1981 claim may have been prompted by advice he received from an employee of the Social Security Administration (“SSA”) to the effect that he “shouldn’t concern [himjself with the black lung claim so much, because if [he] qualified for disability social security [he] would automatically qualify for black lung benefits.” Id. at 612 (emphasis omitted).
The Court concluded that, when Mr. Crowe’s illiteracy was considered in conjunction with his lack of representation and the misinformation given to him by the SSA, “it would be unfair and improper to hold that the procedural denial of the petitioner’s initial claim is sufficient to deprive him of an opportunity with assistance of counsel to advance his 1990 claim on the merits of his health condition.” Crowe, 226 F.3d at 613. The Court said also that “it seems clear that there exists significant evidence of Crowe’s debilitating lung condition,” and urged that the case be resolved “as expeditiously as possible” on remand. Id. at 615. The Court therefore remanded the case to the ALJ for further proceedings.
On remand, Zeigler sought to reopen the record or to remand the case to the District Director for the development of additional evidence. In January 2001 ALJ Mosser denied Zeigler’s request on the grounds that the company should have been able to anticipate the type of evidence to be developed in the case, regardless of whether it was considered a duplicate claim or an original claim, and because Zeigler had enjoyed ample oppor *439 tunity to develop evidence and there was no need unnecessarily to prolong the proceedings. In March 2001 ALJ Mosser entered a new order awarding benefits to Mr. Crowe. Thereafter, Zeigler initiated a proceeding for a modification of ALJ Mosser’s award of benefits and advised the DOL by letter that it refused to pay the benefits awarded to Mr. Crowe.
In the course of the modification proceeding, which by that time had been assigned to a new ALJ, Robert L. Hillyard, the parties deposed four physicians, Dr. Abdul Dahhan, Dr. Lawrence Repsher, Dr. Joseph Renn, and Dr. Gregory Fino, who were presented by Zeigler as witnesses. Each of the four witnesses concluded that Mr. Crowe was not suffering from black lung disease because the objective evidence, that is, x-rays and other medical tests, did not support such a diagnosis. In 2003 ALJ Hillyard denied Zeigler’s modification petition. In August 2004 the BRB reversed ALJ Hillyard’s denial of modification, finding that ALJ Hillyard had placed undue weight on the testimony of Dr. Krock as Mr. Crowe’s treating physician, and remanded the case to ALJ Hill-yard for further proceedings.
In October 2004, while a motion by Mr. Crowe for reconsideration of the BRB’s decision was pending before the BRB, Zeigler’s counsel moved to withdraw from the modification proceeding because Horizon Natural Resources (“Horizon”), which was the successor in interest to Zeigler and had been in bankruptcy proceedings since 2002, had been liquidated. In December 2004, following denial of Mr. Crowe’s motion for reconsideration, the BRB entered an order “notfing]” the withdrawal of Zeigler’s counsel from the modification proceeding. The DOL, through the Office of the Solicitor of Labor, moved both the BRB and ALJ Hillyard to hold Mr. Crowe’s claim in abeyance, stating that time was needed in order to determine whether a surety bond covered the claim and, if no such bond existed, how the Director of the OWCP wished to proceed. In February 2005 the Office of the Solicitor wrote to ALJ Hillyard stating that it had identified a surety bond issued by Aetna Casualty and Surety Company (“Aetna”) that covered Mr. Crowe’s claim. The letter also was sent to Aetna and the Horizon Liquidating Trust to notify them that they could seek to intervene in the modification proceeding as parties in interest.
ALJ Hillyard denied the DOL’s request to hold Mr. Crowe’s claim in abeyance, finding that no insurer yet had been made a party to the modification proceeding and that “[a]dding a new party at this point would be prejudicial to [Mr. Crowe].” On the DOL’s motion for reconsideration, ALJ Hillyard acknowledged that, in light of the liquidation of Horizon and Zeigler and the fact that neither Aetna nor the Director of the OWCP had attempted to intervene in the modification proceeding, the proceeding was without a proponent, but nonetheless ordered briefing on the issue of modification to go forward. In Mr. Crowe’s opening brief on modification, he argued that the modification proceeding should be dismissed for lack of prosecution, because no party in interest had appeared to advocate for modification.
In July 2005 ALJ Hillyard granted modification of the 2001 award of benefits to Mr. Crowe, denying benefits. In his modification order ALJ Hillyard, though finding both that Mr. Crowe’s argument for dismissal of the modification proceeding was “technically accurate” and that Zeig-ler’s request to develop additional medical evidence in support of modification was moot because Zeigler had ceased to exist, nonetheless found that review of Zeigler’s evidence in support of modification was *440 required because Zeigler had been a party to the proceeding at one time. On appeal from ALJ Hillyard’s modification order, the BRB, like ALJ Hillyard, rejected Mr. Crowe’s renewed request for dismissal of the modification proceeding, finding that Zeigler was a party to the proceeding and that Zeigler’s counsel were representing Zeigler’s interest. Likewise, the BRB affirmed ALJ Hillyard’s decision to credit the evidence of Dr. Dahhan, Dr. Repsher, Dr. Renn, and Dr. Fino. However, the BRB remanded the case for a determination by ALJ Hillyard as to whether modification would render justice under the BLBA.
In February 2008 Travelers filed a “protective motion for conditional intervention” in the modification proceeding, asserting that it was the successor in interest to Aetna and that it might be liable on a surety bond if Mr. Crowe were awarded benefits. On remand from of the case from the BRB, Mr. Crowe argued that a grant of modification would not render justice under the BLBA because Zeigler had refused to pay the 2001 benefits award to Mr. Crowe and had failed diligently to defend against Mr. Crowe’s original claim for benefits. In January 2009 ALJ Mos-ser, to whom the case once again had been assigned, found that Zeigler or its successors in interest had displayed adequate diligence in prosecuting modification and further found that modification rendered justice under the BLBA. Mr. Crowe appealed to the BRB, again asking that the modification proceeding be dismissed by reason of Zeigler’s inability, as an entity liquidated in bankruptcy, to pursue such a proceeding. In August 2009 Mr. Crowe died at the age of sixty-five.
In October 2009 the BRB granted Travelers leave to intervene in the appeal from ALJ Mosser’s modification order. On March 18, 2010, the BRB entered an order finding that Travelers had brought a timely request for intervention, because the request to intervene had followed closely upon a decision of this Court showing that Travelers, as Zeigler’s surety, was required to intervene to protect its interest. The BRB also affirmed ALJ Mosser’s decision to grant modification and to terminate benefits. At the time the BRB affirmed the denial of benefits, it granted Mr. Crowe’s widow, Florence Crowe, leave to intervene in this matter and to be substituted for her late husband as the claimant. On May 12, 2010, Mrs. Crowe petitioned this Court for review of the BRB’s decision.
III. Analysis
While technically this appeal is from a decision of the BRB, in reviewing the denial of black lung benefits, the Court must evaluate the judgment of the ALJ, not that of the BRB. See Collins v. Old Ben Coal Co., 861 F.2d 481, 486 (7th Cir.1988). The Court must determine whether the ALJ’s decision is rational, is supported by substantial evidence, and is consistent with the law. See Migliorini v. Director, OWCP, 898 F.2d 1292, 1294 (7th Cir.1990). Although the Court must review the entire record, the Court may not redetermine the facts or substitute its judgment for that of the ALJ. See Freeman United Coal Mining Co. v. BRB, 919 F.2d 451, 452 (7th Cir.1990). The Court’s review of questions of law, however, is de novo. See Peabody Coal Co. v. Vigna, 22 F.3d 1388, 1393 (7th Cir.1994). “The [BRB] has the identical scope of review when sitting as an appellate panel reviewing decisions of the ALJ.” Zettler v. Director, OWCP, 886 F.2d 831, 834 (7th Cir.1989). Judicial review of the BRB’s decision is limited to whether the BRB adhered to its scope of review and to whether the BRB committed an error of law. See *441 Old Ben Coal Co. v. Prewitt, 755 F.2d 588, 589-90 (7th Cir.1985).
On appeal, Mrs. Crowe presents three issues for the Court’s consideration: (1) whether the modification proceeding giving rise to the petition in this case should have been dismissed when Zeigler was liquidated in bankruptcy and no other party intervened as a proponent of modification; (2) whether ALJ Mosser abused his discretion in finding that modification of his 2001 order awarding benefits to Mr. Crowe rendered justice under the BLBA where Zeig-ler, which never appealed the 2001 order, had willfully refused to pay benefits to Mr. Crowe as ordered, and whether the modification decision was otherwise arbitrary and capricious in ignoring ALJ Mosser’s prior findings that Zeigler had not been diligent in defending Mr. Crowe’s original claim; and (3) whether the BRB erred in reversing ALJ Hillyard’s 2003 order denying modification of the 2001 benefits award where the 2003 order found no error of fact in the 2001 award. Because the Court concurs in Mrs. Crowe’s first asserted ground for reversal, it is unnecessary for the Court to address the other two asserted grounds for reversal.
The BLBA provides that any “party in interest ... including an employer” may request modification of an award of benefits under the statute. 33 U.S.C. § 922.[1] Also, DOL regulations promulgated pursuant to the BLBA permit any interested person to become a party to a proceeding concerning an award of black lung benefits. Specifically, in addition to identifying a claimant, persons authorized to execute a claim on the claimant’s behalf, a coal mine operator, and the Director of the OWCP as proper parties to a black lung claim, the regulations provide that “[a]ny other individual may be made a party if that individual’s rights with respect to benefits may be prejudiced by a decision to be made.” 20 C.F.R. § 725.360(d). The regulations provide also that an insurance carrier of a coal mine operator is a proper party to a proceeding concerning an award of black lung benefits. See 20 C.F.R. § 725.360(a)(4). In general, an award of black lung benefits can be modified by an ALJ only where such modification is desirable in order to render justice under the BLBA. See O’Keeffe v. Aerojet-General Shipyards, Inc., 404 U.S. 254, 255, 92 S.Ct. 405, 30 L.Ed.2d 424 (1971); Old Ben Coal Co. v. Director, OWCP, 292 F.3d 533, 547 (7th Cir.2002).
In the context of a ease specifically involving, as in this case, a claim for black lung benefits against one of Horizon’s predecessors in interest, Old Ben Coal Company (“Old Ben”), this Court held that the predecessor coal mine operator, upon liquidation in bankruptcy, ceased to be a real party in interest to the BLBA proceedings. See Old Ben Coal Co. v. OWCP, 476 F.3d 418, 420 (7th Cir.2007) (“Old Ben Coal ”) (“Old Ben has no possible stake in this litigation. It is therefore not a real party in interest, which is to say a party that has a legally protectable interest in the outcome of the suit. It is a party in name only.”). So too in this case: after Zeigler’s liquidation in bankruptcy, pursuant to the same order that liquidated Old Ben, then upon Mr. Crowe’s request, Zeigler should have been dismissed from this case under elementary principles of prudential standing. See RK Co. v. See, 622 F.3d 846, 851 (7th Cir.2010) (citing *442 Rawoof v. Texor Petroleum Co., 521 F.3d 750, 757 (7th Cir.2008)) (noting that the real-party-in-interest rule is essentially a non-constitutional, prudential limitation on standing).[2]
Equally importantly, in Old Ben Coal the Court specifically found that the order liquidating Horizon and its predecessors in interest (including Old Ben and Zeigler), did not make Horizon and its predecessors in interest parties in interest to BLBA proceedings. The liquidation order provided that pending black lung claims against Horizon and its predecessors in interest “shall not be dismissed but instead, allowed to proceed to final adjudication with the applicable debtors as parties.” 476 F.3d at 419. The order provided also that “claims that result in benefit awards will not be enforced against the Debtors but rather will form the basis for collection from any other responsible parties therefore, including without limitation, the Debtors’ sureties under the black lung statute.” Id. (brackets omitted). However, the Court found that because the order liquidated Horizon and its predecessors in interest and designated no successors in interest to those entities, the order did not make Horizon and its predecessors in interest viable parties to BLBA proceedings, short of intervention in such proceedings by sureties of Horizon and its predecessors in interest or the DOL. See id. at 419-20.[3]
Because the Court determines that Zeigler was no longer a party in interest to the modification proceeding giving rise to this appeal after Zeigler’s liquidation in bankruptcy, the remaining issue to be decided by the Court is an extremely narrow one: whether Travelers sought in a timely manner to intervene in the modification proceeding upon being put on notice of its interest in the proceeding. As already has been noted, applicable DOL regulations permit an insurer of a mine operator and, more broadly, any person whose rights may be affected by a BLBA proceeding, including a modification proceeding, to be made a party to the proceeding. See 20 C.F.R. § 725.360(a)(4), (d). Although the regulations do not specify a time within which an insurer or other interested person must seek intervention, it seems reasonable to suppose that the regulations contemplate that an insurer or other person whose interests are likely to be affected by a BLBA proceeding will seek intervention in a timely manner upon being notified of an interest in the proceeding. Thus, the pertinent regulations specifically provide that a request for modification of an order for benefits under the BLBA may be “denfied] ... by reason of abandonment.” 20 C.F.R. § 725.310(c).
*443 It is apparent to the Court that Travelers did not seek timely intervention in the modification proceeding at issue in this case. As noted, no later than February 2005, when the DOL invited Aetna, the predecessor in interest of Travelers, to intervene in the proceeding, Travelers was on notice that, by virtue of the surety bond issued to Zeigler covering Mr. Crowe’s claim, Travelers had an interest that might be impaired by the proceeding, were Travelers, as Zeigler’s surety, required to pay Mr. Crowe’s claim against Zeigler. Travelers argues that its petition for intervention in the modification proceeding was timely because the petition followed closely upon this Court’s decision in Zeigler Coal Co. v. OWCP, 490 F.3d 609 (7th Cir.2007) (“Zeigler Coal”). Until the Court rendered its decision in Zeigler Coal, Travelers argues, the surety was unaware that it needed to intervene in the modification proceeding to protect its rights. In Zeig-ler Coal, the Court found that a surety of Zeigler was entitled to intervene in a proceeding for benefits under the BLBA, where the surety had not been aware of its obligation to intervene until this Court rendered its decision in Old Ben Coal earlier in the same year. See Zeigler Coal, 490 F.3d at 610 n. 1. The Court finds the reliance of Travelers on Zeigler Coal to be misplaced.
Most importantly for purposes of this case, nothing in the Zeigler Coal decision in any way amplified or enlarged upon the Court’s basic holding in Old Ben Coal. In the Old Ben Coal decision, as already has been discussed, the Court found that Old Ben, having been liquidated in bankruptcy and having no “palpable existence or successor,” was not a real party in interest to a proceeding under the BLBA and thus dismissed the case. 476 F.3d at 419. In Old Ben Coal the Court held further that “[a]ny entity, such as an insurance company or a surety, that would be prejudiced by an award of black lung benefits is entitled to intervene in the administrative proceeding with the rights of a party.” Id. at 420 (citing 20 C.F.R. § 725.360(a)(4), (d)). In light of these unambiguous pronouncements in Old Ben Coal, even assuming for the sake of argument that the notice given to Travelers in 2005 by the DOL was insufficient to alert Travelers to the need to intervene in the modification proceeding at issue in this case, it is difficult to understand why Traveler waited until over a year after the Court handed down the Old Ben Coal decision to seek intervention in the modification proceeding.[4]
What appears most plausible to the Court from the record of this case (and what Travelers more or less has owned up to both in its written submissions to the Court and at oral argument in this appeal) is that Travelers made a tactical decision to stay out of the modification proceeding at issue here for as long as it could do so. Finally, Travelers sought leave to intervene in the modification proceeding only when the surety concluded that it could no longer sit on the sidelines without risking a finding that the claim for modification had been abandoned. This behavior, though not commendable, may be legitimate, provided that the delay by Travelers in seeking to intervene in this matter did not prejudice Mr. and Mrs. Crowe.
*444 In evaluating the timeliness of the request by Travelers to intervene in the modification proceeding, the Court recognizes that “the mere lapse of time by itself does not make an application untimely,” and instead the Court “must weigh the lapse of time in the light of all the circumstances of the case.” 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1916 (3d ed. 1998 & Supp.2010). In particular, the Court “must consider whether the applicant was in a position to seek intervention at an earlier stage in the ease”; thus, “[w]hen the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention.” Id. (collecting cases). “The most important consideration” in determining if a request to intervene is timely is whether “delay in moving for intervention ... prejudice^] the existing parties to the case” and, “[i]f prejudice is found, [intervention] will be denied as untimely.” Id.
Here there is little serious question that the delay by Travelers in seeking leave to intervene in the modification proceeding was prejudicial. For approximately three years, while the modification proceeding was artificially, and improperly, kept alive by the ALJs assigned to the matter, Mr. Crowe was obliged to defend his award of benefits against a phantom litigant.[5] On similar facts, this Court has rejected intervention. See Larson v. JPMorgan Chase & Co., 530 F.3d 578, 583-84 (7th Cir.2008) (a failure by a pension fund to seek to intervene in a class action until over three years after it knew or should have known of its interest in the proceedings, and after a settlement of the class-wide claims had been reached and judgment on the settlement had been entered, was grounds to deny intervention); Sokaogon Chippewa Cmty. v. Babbitt, 214 F.3d 941, 949-50 (7th Cir.2000) (an Indian tribe’s delay in seeking intervention in a lawsuit until more than five years after the tribe’s members knew or had reason to know that their interests might be adversely affected by the outcome of the suit was grounds to deny intervention, particularly where the proposed intervention was a belated device to block a settlement of the lawsuit). Travelers, as noted, made a tactical decision not to intervene in this matter until the eleventh hour (at least), and now Travelers will have to live with the consequences of that decision. The BRB’s order affirming modification of the award of benefits to Mr. Crowe will be reversed, and this case will be remanded with instructions for the reinstatement of the award.
IV. Conclusion
It was error for the BRB to refuse to dismiss the modification proceeding and to permit Travelers to intervene in the proceeding. Accordingly, the decision of the BRB is ReveRsed, and this matter is RemaNded to the BRB for remand to the ALJ with instructions to reinstate the ALJ’s 2001 award of black lung benefits to Mr. Crowe.
HAMILTON, Circuit Judge.
I join Judge Murphy’s opinion for the court, reversing for reinstatement of the award of benefits in favor of the late Mr. Crowe. I write separately to address a second basis for reversal that is at least as *445 powerful as that explained by Judge Murphy.
The BRB and the ALJ found that it was consistent with “justice under the Act” to allow this modification proceeding to go forward. That determination was based on a mistake. The mistake led the ALJ and the BRB to create incentives to encourage employers to refuse to comply with final payment orders, as required by law. Those incentives will undermine rather than “render justice under the Act.”
In June 2001, after a decade of litigation in administrative and judicial proceedings, an ALJ found that Harold Crowe was entitled to monthly benefits under the Black Lung Act, as well as $168,000 in back benefits. The ALJ ordered Zeigler Coal to pay those benefits. Zeigler Coal did not appeal any further. It also did not pay as ordered. Instead, it decided to try to start all over again by filing a petition to modify the award. That tactic, indulged by the ALJ and ultimately even encouraged by the BRB, essentially erased the parties’ efforts for the preceding decade. In my view, the ALJ and the BRB acted arbitrarily and capriciously by considering a petition to modify a final payment order that the petitioner was willfully and lawlessly disobeying.
Let me be clear: my objection is not to Zeigler Coal’s decision to seek modification. As Judge Ripple explains in detail in his dissent, the black lung benefits program prizes accuracy over finality to an unusual degree, incorporating the Long-shore and Harbor Workers’ Compensation Act’s broad modification authority set forth in 33 U.S.C. § 922. See 30 U.S.C. § 932; 20 C.F.R. § 725.310. If Zeigler Coal believed the June 2001 award of benefits was wrong, it was entitled to seek modification. But Zeigler Coal was not legally entitled simply to ignore the final order of payment.
When the final order was issued in June 2001 and was not appealed or stayed, benefits were due to Mr. Crowe. The relevant regulation provides, not surprisingly, that “benefits under the Act shall be paid when they become due.” 20 C.F.R. § 725.502(a)(1). Accord, 33 U.S.C. §§ 918, 921(a) (during judicial review, payment of amounts required by an award shall not be stayed pending final decision, unless ordered by the court on showing of threat of irreparable injury). The regulation then explains: “Benefits shall be considered due after the issuance of an effective order requiring the payment of benefits by a district director, administrative law judge, Benefits Review Board, or court, notwithstanding the pendency of a motion for reconsideration before an administrative law judge or an appeal to the Board or court, except that benefits shall not be considered due where the payment of such benefits has been stayed by the Benefits Review Board or appropriate court.” 20 C.F.R. § 725.502(a)(1). The regulation goes on to state: “An effective order shall remain in effect unless it is vacated by an administrative law judge on reconsideration, or, upon review under section 21 of the LHWCA, by the Benefits Review Board or an appropriate court, or is superseded by an effective order issued pursuant to § 725.310 [the modification authority].” Id. The pendency of a modification petition does not affect the finality of an award. Hansen v. Director, OWCP, 984 F.2d 364, 367 (10th Cir.1993) (holding for purposes of appellate jurisdiction that “pendency of a motion to modify under § 922 does not destroy the finality of the Board’s order”); see also National Mines Corp. v. Carroll, 64 F.3d 135, 141 (3d Cir.1995) (noting for purposes of statute of limitations that, “as a general rule, the mere existence of modification proceedings *446 does not affect the finality of an existing award of compensation”).
Consistent with these provisions of law, the ALJ, the BRB, and Judge Ripple all recognize that Zeigler Coal was violating the law by refusing to pay the final, unap-pealed, and unstayed payment order. See App. 13 (ALJ decision stating: “There is no question that [employer] should have commenced the payment of benefits to the claimant when it chose to pursue modification rather than appeal the decision on remand,” and describing this as “disregard for the law”); App. 5-6 (BRB decision affirming and finding no basis to disagree on this issue); post at 54 (“there appears to be no significant dispute that the surety’s failure to pay benefits while the modification proceeding continued was a violation of law”).
Yet the ALJ and the BRB chose to indulge this tactic, and even found it consistent with “justice under the Act.” The ALJ explained his reasoning as follows: “However, this disregard for the law worked to the detriment of other coal mining companies rather than the claimant since benefits were paid the claimant by the Department of Labor from the Black Lung Disability Trust Fund which is funded through a tax on the severance of coal.” App. 13-14. The ALJ went on to explain that the interest in accuracy over finality and the weight of the (by then liquidated) employer’s new evidence showed that modification would serve “justice under the Act.” Id. at 14. The BRB endorsed this reasoning.
That explanation by the ALJ and BRB was built upon an error that was both factual and legal. — a misunderstanding about the consequence of Zeigler Coal’s tactic — and it invites employers and their sureties to resist payment indefinitely, until the claimant dies and his heirs give up. If Zeigler Coal did not pay monthly benefits going forward, the trust fund (paid for by other coal companies) would pay, and in fact did pay, Mr. Crowe. But the ALJ’s and BRB’s explanation simply overlooked Zeigler Coal’s obligation to pay back benefits under the final payment order. Zeigler Coal owed Mr. Crowe more than $168,000 under the final payment order. The fund would not pay back benefits. 26 U.S.C. § 9501(d)(1)(A) (funds from Black Lung Trust fund may be expended for benefits only after a determination of entitlement, not from the original time of disability). Thus the effect of Zeigler Coal’s decision to disobey the final payment order was to deny Mr. Crowe the $168,000 in back benefits to which he had been found entitled. The ALJ and the BRB overlooked this central reality when they erroneously found that Zeigler Coal’s disregard of the law hurt only other coal companies rather than Mr. Crowe and his family. When an administrative agency has made such an error, its order may not stand. E.g., SEC v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (“an order may not stand if the agency has misconceived the law”); accord, Shelton v. Old Ben Coal Co., 933 F.2d 504, 508 (7th Cir.1991) (reversing denial of black lung benefits where BRB applied wrong legal standard).
Zeigler Coal’s decision not to obey the final payment order was lawless but easy to understand. The law provides that a modification order “shall not affect any compensation previously paid,” with exceptions not relevant here. 33 U.S.C. § 922. Zeigler Coal knew that if it complied with the final payment order, as it was required to do, and later won a modification, it could not recover the money it had paid to Mr. Crowe under the final payment order.
What to do? The answer for Zeigler Coal was obvious, at least if the BRB was willing to indulge such lawless behavior. *447 By refusing to pay under the final payment order while pursuing a modification, Zeigler Coal delayed payment of back benefits indefinitely, shifted the cost of current monthly benefits to the trust fund, denied Mr. Crowe the back benefits he had been awarded, and forced him to litigate for years more.
If the BRB is willing to consider a modification petition by an employer that is refusing to comply with the BRB’s own final payment order, employers in many cases will have a strong financial incentive to pursue that same lawless course. The BRB’s tolerance encourages employers to try to delay initial benefit determinations as long as possible, while making minimal efforts to defend the cases on the merits. Then, if they lose with a sparse record that would never support a reversal on judicial review, they can decline to appeal, refuse to pay, and seek modification. That course renders all of the claimants’ and the black lung benefits system’s efforts up to that point a nullity.
For the employer, it’s a no-lose proposition, but it imposes costs on everybody else involved in the program. (1) The intended beneficiaries and their families are denied the full benefits they are entitled to receive, and must keep litigating indefinitely. (2) The trust fund paid for by the whole industry picks up the tab for ongoing monthly benefits. (3) The BRB and its administrative law judges must entertain routine petitions to modify by scofflaw employers. If modification is granted, the employer is way ahead. If modification is eventually denied, the employer is no worse off than it was when it first lost. The BRB’s tolerance of this tactic will impose even heavier burdens and longer delays on a program already known for decades-long litigation. An administrative practice that creates such incentives is arbitrary and capricious, and cannot serve the interests of “justice under the Act.”[1]
In response to this reasoning, Travelers makes three principal points, but they are not persuasive. First, it tries to characterize Zeigler Coal’s actions as a refusal to pay only “interim” benefits. But there was nothing “interim” about the benefits awarded under the final payment order in 2001. Second, Travelers points out that the law provides a mechanism for enforcing payment orders, in 33 U.S.C. § 921(d), which allows the government or a beneficiary to apply for enforcement of the award in a district court. That’s true, and our record does not indicate why Mr. Crowe or the government did not seek enforcement of this final payment award sooner. But the existence of one costly enforcement mechanism — federal litigation — does not prevent the BRB from using other sensible policies to insist that its orders be obeyed.
Third, Travelers argues that modification is intended to be readily available to all parties and “not subject to arbitrary limitations.” Appellee’s Br. 23. With respect, nothing in the approach I would take on this issue is inconsistent with that general point. The rule I would apply— refuse to entertain a petition to modify when the petitioner is disobeying a final payment order — is comparable to similar rules that courts often apply to parties who disobey their orders.
For example, parties who are subject to an erroneous and even an unconstitutional injunction must obey that injunction while they seek to have it reversed or modified. *448 The fact that the injunction was erroneous or unconstitutional is not a defense against contempt sanctions. E.g., Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967) (affirming criminal contempt convictions for violations of temporary injunction that blocked civil rights demonstration). Similarly, a convicted prisoner who escapes from prison and becomes a fugitive can expect that his pending appeal of his conviction will be dismissed, regardless of the strength of his arguments on the merits, and even if he might be innocent. E.g., Ortega-Rodriguez v. United States, 507 U.S. 234, 239-42, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993) (collecting cases). A party to a civil case who willfully disobeys court orders of any kind, such as those enforcing discovery obligations, can expect dismissal or a default judgment as a sanction, no matter the strength of her claims or defenses. In these situations, courts recognize that if they tolerate willful disobedience of their orders, and if they leave their doors and processes open to those who would flout their authority, their orders will not be obeyed. Their duties to other parties and their own institutional obligations require such strong sanctions, given sufficient provocation.
Analogous principles apply here, notwithstanding the different balance between finality and accuracy that has been struck under the Black Lung Benefits Act. The issue here is not the accuracy or finality of BRB decisions, but the integrity of those decisions. By refusing to consider a petition to modify by a party who is willfully disobeying a final payment order, the BRB would promote justice under the Act. Employers would have a strong incentive to litigate original claims vigorously, if they want to contest them, and a strong incentive to comply with final payment orders. In this case, however, the BRB tolerated such willful disobedience of the final payment order. The result is to encourage such disobedience of the BRB’s own final payment orders, to reward even more prolonged and wasteful litigation, and to put more burdens on beneficiaries and their families, on other employers who honor their obligations (and may now feel they have been taken for fools by doing so), and on the entire Black Lung Benefit Act administrative apparatus.
The best argument against my view is that explained so well by Judge Ripple in his dissent: the ALJ and BRB have the authority to refuse to consider a petition for modification that is an abuse of the process, see Old Ben Coal Co. v. Director, OWCP (Hilliard), 292 F.3d 533, 547 (7th Cir.2002) (acknowledging possibility but holding that agency abused discretion by refusing to consider petition to modify filed after claimant died), but their task is to balance many competing values and policies in making such decisions; courts should leave that balancing to the sound discretion of the ALJ and the BRB. Judge Ripple sees no abuse of that discretion here, especially when viewed in hindsight, when we know that after nearly another decade of litigation, the ALJ changed his mind about Mr. Crowe’s eligibility for benefits.
The general point about the roles of the ALJ and BRB is correct, and in other contexts they are entitled to substantial leeway in exercising that discretion. Accord, Hilliard, 292 F.3d at 547; id. at 554-55 (Wood, J., dissenting) (arguing for deference to agency’s decision to deny modification to avoid piecemeal litigation that would exhaust claimants’ resources). I respectfully disagree, however, as applied to the problems posed by this lawless, willful refusal to comply with a final payment order. First, the ALJ and BRB justified their decisions by erroneously overlooking the effect that the employer’s tactic had on *449 the claimant. More fundamental, the incentives created by the BRB’s approach to this case are simply not consistent with the purposes of the Black Lung Benefits Act. While the BRB may exercise discretion in such matters, the employer’s tactic of refusing to pay as ordered while also invoking the modification remedy was so corrosive that it required a much stronger response than the verbal tut-tut administered by the ALJ. Far more meaningful than those mere words was the decision to give the employer (now its surety) all the rewards it could hope to achieve by this cynical and cold-blooded tactic. The BRB has allowed its understandable desire for accuracy to be twisted here into a tool to defeat the purpose of the statute.
I also do not believe that the question should be approached from the perspective of what the ALJ and BRB learned about the merits of the underlying issue over the long course of the modification proceedings. The relevant perspective is the time the scofflaw employer files the petition for modification. That’s when the ALJ must decide whether to entertain the proceeding at all, before he or she knows what the new evidence might show. By the same token, a court deciding whether to punish parties who disobeyed a temporary injunction does not wait until the ultimate merits of the injunction are resolved, and an appellate court deciding whether to dismiss an appeal by a fugitive-defendant does not consider full briefing on the merits.
In the end, I do not know whether Mr. Crowe suffered from black lung disease or not. ALJs and doctors who are much better suited to answer that question have disagreed over the past 20 years. What I do know is that a final decision was made in 2001 and Mr. Crowe’s employer was ordered to pay benefits to him. The employer unlawfully refused, and ever since then, the agency has been indulging this refusal to comply with its own order, thereby encouraging others to do the same. That approach simply is not consistent with “justice under the Act.” For this reason, as well as that explained by Judge Murphy, I concur in the remand of this case.

. The statute governing modification of awards of black lung benefits, 33 U.S.C. § 922, in fact is a provision of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-50. It is incorporated by reference into the BLBA by way of 30 U.S.C. § 932(a). See Eifler v. OWCP, 926 F.2d 663, 665 (7th Cir.1991).

. The Court recognizes that standing in administrative proceedings under the BLBA is determined not by Article III of the Constitution but by DOL regulations and applicable statutes. See, e.g., Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1119 (6th Cir.1984) (Congress may empower the BRB to adjudicate black lung benefits cases); Kalaris v. Donovan, 697 F.2d 376, 388 (D.C.Cir.1983) (the BRB is not an Article III court but may execute "some functions historically performed by judges"). However, at least for purposes of this case, the Court will assume what seems also to have been assumed in Old Ben Coal, namely, that tests of non-constitutional standing both in administrative proceedings under the BLBA and in suits for judicial review of such proceedings are approximately the same. See, e.g., Martin-Trigona v. Federal Reserve Bd., 509 F.2d 363, 365-66 & n. 10 (D.C.Cir.1974).

. This specific portion of the Court’s decision in Old Ben Coal therefore defeats any claim by Travelers that, after Zeigler was liquidated in bankruptcy, Zeigler nevertheless remained a viable party to the modification proceeding at issue in this case by virtue of the bankruptcy court’s order liquidating Zeigler.

. It also is worth noting that in Zeigler Coal the surety sought to intervene approximately two weeks after Old Ben Coal was decided, not over a year later, as is the case here. Too, in Zeigler Coal the surety was not, as in this case, the proponent of the proceedings. In other words, the particular problem presented here, that for approximately five years there was no real party in interest prosecuting the modification proceeding at issue, was not present in Zeigler Coal.

. In this connection, it should be pointed out that during the period of some three years when Travelers was on notice of its interest in the modification proceeding, but refused to intervene in the proceeding, counsel for the surety nonetheless were permitted to file briefing in the proceeding.

. As Judge Ripple explains, the principle that a modification should “render justice under the act” stems from the Supreme Court’s de-cisión under the LHWCA in O’Keeffe v. Aerojet-General Shipyards, Inc., 404 U.S. 254, 255-56, 92 S.Ct. 405, 30 L.Ed.2d 424 (1971).