NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 14, 2012
Decided December 13, 2012

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-2048

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 09 CR 619 |
| MARIA CYD ADRIATICO-FERNANDEZ, | |
| *Defendant-Appellant*. | Samuel Der-Yeghiayan, *Judge*. |

**O R D E R**

Maria Adriatico-Fernandez ("Fernandez") pleaded guilty to conspiracy to commit marriage fraud, 18 U.S.C. § 371; 8 U.S.C. § 1325(c), after authorities discovered she had prepared immigration documents for aliens she knew had entered into sham marriages with United States citizens. The district court sentenced her to 10 months' imprisonment, the bottom of her guidelines range. On appeal Fernandez argues that the court clearly erred in finding that her offense involved six or more marriages, *see* U.S.S.G. § 2L2.1(b)(2)(A), and also contends that her sentence is substantively unreasonable. But the government submitted evidence showing that Fernandez prepared documents for seven marriages that she knew were fraudulent, and Fernandez did not challenge the reliability of that evidence or present any evidence in opposition. The district court also gave meaningful consideration

to the sentencing factors in 18 U.S.C. § 3553(a) when imposing her sentence. We thus affirm Fernandez's sentence.

**Background**

In 2009 the government charged Fernandez and nine codefendants with conspiracy to commit marriage fraud and other related crimes. Maria Cruz was the ringleader of the conspiracy and arranged marriages between aliens and United States citizens for the purpose of evading immigration laws. The citizens were paid a lump sum when the marriages occurred and then received monthly payments from their alien spouse until the spouse obtained citizenship. Cruz and other conspirators took various actions to help the marriages occur and appear legitimate, such as driving the citizens and aliens to weddings and taking photographs of the "couples."

Fernandez's role in the conspiracy was to complete immigration documents for the marriage participants, who were referred to her by Cruz. When Fernandez pleaded guilty she admitted in a plea declaration that she had prepared documents for the participants in two marriages that she knew to be fraudulent. But the government later took the position that Fernandez had completed paperwork for seven marriages that she knew were fraudulent, and submitted evidence supporting that allegation to the probation officer who prepared Fernandez's presentence report. The principal piece of evidence was a report prepared by an Immigration and Customs Enforcement officer who interviewed Fernandez about her role in the conspiracy. According to the report, Fernandez admitted preparing documents for the seven marriages identified by the government and said that Cruz introduced her to the people who had participated in those marriages. Fernandez referred to Cruz as a "matchmaker" who has a "business," and said that she "presumed that the people Cruz referred to her were all business arrangement marriages because she knew what kind of business Cruz had." Fernandez also said that she and Cruz first met as girls growing up in the Philippines and that she believed Cruz had arranged around 25 marriages, "but only [knew] the ones for sure that she prepared documents for." Finally, according to the report, Fernandez admitted that she herself was able to become a United States citizen by paying another citizen $15,000 to enter into a sham marriage with her in 1996. She never lived with her "husband," and has since remarried after divorcing him in 1999.

Fernandez declined to discuss the details of her crime with the probation officer and did not submit any evidence opposing the ICE officer's report. The probation officer determined that the government's evidence was reliable and incorporated it into the presentence report, which calculated Fernandez's guidelines imprisonment range at 10 to 16 months. That calculation included a three-point increase to Fernandez's offense level

because the probation officer determined that she had prepared immigration documents for between 6 and 24 marriages that she knew were fraudulent, *see* U.S.S.G. § 2L2.1(b)(2)(A); the officer reported specifically that she knew all 7 of the marriages alleged by the government were fraudulent.[1]

Despite not submitting her own version of the facts to the probation officer, Fernandez filed a sentencing memorandum that included objections to the facts in the presentence report. In that document, Fernandez's lawyer wrote that Fernandez "refutes that she ever told ICE agents that she presumed every marriage referred by Cruz to be fraudulent." Counsel also asserted that some of the citizens and aliens that Cruz referred to Fernandez entered into "legitimate" marriages, and insisted that Cruz had not actually referred to Fernandez the participants in three of the marriages identified by the government.  Fernandez admitted that she knew three of the seven marriages identified by the government were shams, counsel concluded, but denied knowing that the others were fraudulent.

At the sentencing hearing, Fernandez again did not present any evidence contradicting the ICE officer's report. She did not call the officer to testify or testify herself about her alleged lack of knowledge of some of the fraudulent marriages. Instead, she relied on the unsworn statements of her lawyer, who again insisted that § 2L2.1(b)(2)(A) should not be applied because Fernandez did not know that six or more of the marriages were shams. But contrary to her sentencing memorandum, her lawyer no longer asserted that Fernandez had not made the statements that the ICE officer said she had in the report; counsel instead argued that some of Fernandez's statements had "been taken somewhat out of context" by the government.

The district court ruled that the government had presented sufficient evidence to show by a preponderance of the evidence that Fernandez knew all seven of the marriages were fraudulent. That finding and the application of  § 2L2.1(b)(2)(A) resulted in a guidelines range of 10 to 16 months. Counsel then argued that Fernandez should receive a sentence of probation and "some form of home confinement" because a variety of mitigating factors supported a below-range sentence: her close-knit family, community

---

[1] Although § 2L2.1(b)(2) asks whether an offense "involved six or more documents or passports," application note 2 states that "[w]here it is established that multiple documents are part of a set of documents intended for use by a single person, treat the set as one document." The parties agree that the relevant measure is therefore how many marriages Fernandez knew were fraudulent, not how many individual documents she prepared for the citizens and aliens who participated in those marriages.

service, work history, lack of a criminal record, and the true shame and regret she felt about her crime. Counsel also asserted that Fernandez had prepared the immigration documents not out of a desire for money, but because of her misguided belief that she was helping people. Finally, counsel argued that Fernandez's age of 55 years by itself makes her unlikely to reoffend, and observed that some of her codefendants had received sentences of probation.

The district court noted each of Fernandez's arguments and, after thoroughly discussing the sentencing factors in 18 U.S.C. § 3553(a), sentenced her to 10 months' imprisonment. During that discussion the court explained that marriage fraud is a drain on society that hurts immigrants who desire to enter into legitimate marriages with United States citizens. For that reason, the court found a strong need to deter others from committing marriage fraud even if Fernandez herself is unlikely to reoffend. The court also stated that Fernandez had an "integral role" in the conspiracy and found that Fernandez's own sham marriage showed that she had previously disrespected the law. Finally, the court noted that Fernandez's codefendants who had been sentenced to probation all had lower advisory sentencing ranges than she did.

**Analysis**

Fernandez first argues that the district court clearly erred in applying U.S.S.G. § 2L2.1(b)(2)(A) because the government failed to prove that she knew six or more of the marriages she prepared documents for were fraudulent. She asserts—as she did in her sentencing memorandum, but not at the sentencing hearing itself—that Cruz did not refer some of the fraudulent marriages to her and that some marriages that Cruz referred to her on other occasions were entirely legitimate. She also argues that her knowledge that Cruz arranged sham marriages by itself was not enough for the court to infer that she knew *every* marriage Cruz referred to her was fraudulent, because completing immigration documents is not by itself a criminal act.

Fernandez's arguments cannot succeed because they are unsupported by any evidence in the record and are contradicted by the evidence that the government submitted. According to the ICE officer's report, Fernandez said that Cruz referred her all seven of the marriages at issue and that she "presumed" all of the marriages Cruz referred were "business arrangement marriages." She also said that she knew "for sure" that all of Cruz's marriages that she prepared documents for were fraudulent. Those facts were incorporated into the presentence report, and defendants bear the burden of proving that facts in a presentence report are inaccurate or unreliable. *E.g., United States v. Love*, 680 F.3d 994, 999 (7th Cir. 2012). Yet rather than challenging the report with her testimony or other evidence, Fernandez simply asserted through counsel that some of its contents are not true. A

lawyer's unsupported statements are not evidence. *United States v. Chapman*, 694 F.3d 908, 914 (7th Cir. 2012); *United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008); *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002). And when a defendant offers no evidence questioning the accuracy of a presentence report, the district court may rely on the report's contents as long as they appear to be reliable. *Love*, 680 F.3d at 999; *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008); *United States v. Schroeder*, 536 F.3d 746, 752 (7th Cir. 2008). Fernandez has never argued that the ICE officer's report fails to meet that lenient standard. *See, e.g., Rollins*, 544 F.3d at 838 (noting that evidentiary standards are relaxed at sentencing). Thus, the district court did not err when it accepted the only evidence that was presented before it and concluded that Fernandez knew all seven marriages she prepared documents for were fraudulent.

Fernandez's challenge to her sentence fares no better. A sentence is reasonable if the district court gives "meaningful consideration" to the sentencing factors in § 3553(a) and chooses a sentence that is objectively reasonable in light of those factors and the individual circumstances of the case. *United States v. Freeman*, 691 F.3d 893, 902 (7th Cir. 2012); *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008). Fernandez's sentence is presumed reasonable because it is within her guidelines range, *see Rita v. United States*, 551 U.S. 338, 341 (2007); *United States v. Aslan*, 644 F.3d 526, 531–32 (7th Cir. 2011), and she has presented no persuasive reason to overcome that presumption. The district court noted all of the arguments in mitigation that she repeats on appeal and found that they are outweighed by several aggravating factors, including her past disrespect for the law and the need to deter marriage fraud. Those justifications are not unreasonable. Fernandez appears to contend that we should reweigh the § 3553(a) factors and determine that a lower sentence would better suit her crime, but our task is "simply to assess whether the overall prison sentence imposed by the district court is reasonable." *United States v. Angle*, 598 F.3d 352, 359 (7th Cir. 2010). Finally, Fernandez argues that in giving her a higher sentence than some of her codefendants—despite the observation at sentencing that those codefendants had lower guideline ranges—the district court failed to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But we have repeatedly stated that § 3553(a)(6) addresses disparities across judges and districts—not among codefendants—and that a sentence within the guidelines range necessarily complies with § 3553(a)(6). *E.g., United States v. Grigsby*, 692 F.3d 778, 792 (7th Cir. 2012).

AFFIRMED.