Scott A. ELLIOT, et al., Plaintiff,

v.

MISSION TRUST SERVICES, LLC, Christopher C. Finlay, The Corporation Trust Company, and Michael T. Hosmer, Defendants.

No. 13 C 7770

United States District Court, N.D. Illinois, Eastern Division.

Signed March 11, 2015

Mark Emil Leipold, Jordan Michael Hanson, Karin Therese O'Connell, Gould & Ratner, Chicago, IL, for Plaintiff.

Douglas R. Kay, Offit Kurman PC, Tysons Corner, VA, William G. Tishkoff, Michael R. Wolin, Sarah L. Wixson, Tishkoff & Associates PLLC, Ann Arbor, MI, James Dominick Adducci, Marshall Lee Blankenship, Adducci, Dorf, Lehner, Mitchell & Blankenship, P.C., Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

JEFFREY COLE, UNITED STATES MAGISTRATE JUDGE

The Mission Parties have filed a motion for $17,720.60 in attorneys' fees occasioned

by their September 19, 2014 motion for sanctions. [Dkt. # 155]. The Plaintiffs do not agree that the amount is reasonable, and at best, might be willing to entertain a fee of half that amount. (Mission Parties' Reply Brief at 5, [Dkt. # 188 at 5] ). The motion seems straightforward enough. It turns out it is anything but.

This case began with the Plaintiffs, holders of beneficial interests in Mission Millbrook Trust, which held title to a 368–unit apartment complex in North Carolina, seeking a declaratory judgment that the trustees had failed to comply with the terms of the Trust. Under those terms, should the Trust default on its loan, the trustees were obligated to convert the Trust into a Delaware limited liability company. Sure enough, the Trust defaulted on its whopping $19 million loan. Foreclosure would mean that the Plaintiff beneficiaries would be robbed of not only their investment but the beneficial tax consequences of that investment. The LLC conversion dictated under the Trust agreement would mean that additional capital could be secured—not allowed under the original form of the Trust—thereby offering lender and investors some protection. But when the Plaintiff beneficiaries called for the trustees to cancel the Trust and make the required conversion to a Delaware LLC, the trustees refused, preferring to convert the Trust into a form of LLC that suited them. Judge Norgle found the salient facts all beyond dispute, and when the Plaintiff beneficiaries moved for summary judgment in November 2013, he necessarily granted the motion and ordered the Defendants to comply with their obligations on September 30, 2014. [Dkt. # 126].

Thus, the case was a simple one, and would have been over then and there. But, in addition to responding to the Plaintiffs' summary judgment motion, the Defendant trustees also filed counterclaims against the Plaintiffs for having taken steps to protect their investment when the defendants had refused to comply with the terms of the Trust: breach of contract, negligence, and defamation. These claims may or may not be well-founded—a matter on which we express no opinion—but, reading between the lines, it would seem that the Defendants had no interest in bringing such claims against the Plaintiffs until faced with their summary judgment motion; they had lodged nothing against the Plaintiffs in the preceding four months.

■ But the proverbial cherry on the sundae is the fact that, on February 25, 2014, seven months before Judge Norgle ruled on the summary judgment motion, the Defendants cancelled the Trust and failed to inform the court or the Plaintiffs that they had done so. Thus, "[t]he doom of mere sterility was on the [summary judgment proceedings almost] from the beginning." *Clark v. United States,* 289 U.S. 1, 11, 53 S.Ct. 465, 77 L.Ed. 993 (1933). That appeared to be a matter of indifference to the Defendants who waited until October 8, 2014, to file a motion for reconsideration, finally informing Judge Norgle and the Plaintiffs of the cancellation. This behavior makes a mockery out of the duty of candor lawyers owe to the tribunal before which they are appearing. *Cleveland Hair Clinic, Inc. v. Puig,* 200 F.3d 1063 (7th Cir.2000); *Beam v. IPCO Corp.,* 838 F.2d 242, 249 (7th Cir.1988). A violation of this duty can, itself, lead to sanctions even more severe than payment of an opponent's fees and costs. *Id.*

On reconsideration, on December 16, 2014, Judge Norgle had no choice but to reverse his ruling granting Plaintiffs' summary judgment and find that the Plaintiffs' action to enforce the Trust was moot because the Trust no longer existed. [Dkt. # 145].

The upshot of all this is the Defendants violated the terms of the Trust, forced Plaintiffs to come to court to enforce them, and then cancelled the very Trust that formed the basis of this litigation unbeknownst to the court or the Plaintiffs. By concealing the cancellation from everyone, instead of informing the court—at *any* point in the *seven* months before the court ruled on the motion for summary judgment, the Defendants drove up the costs of this litigation and squandered scarce judicial resources. No matter how indifferent the lawyers may have been to what was going on in the case, they could not have been blind to the fact that a federal district judge was spending time to understand and resolve the motion for summary judgment.

Every hour Judge Norgle spent was an hour squandered. "Litigation is costly not only for the litigants but also for parties in other cases waiting in the queue for judicial attention." *Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir.1991). The Defendants' lawyers were indifferent to his labors and the effect their silence necessarily was having on the due administration of justice in this court. What came next, however, is even more audacious and offensive. After having unsuccessfully gambled on the outcome of the summary judgment motion, the Defendants' counsel said to Judge Norgle in effect, "oh by the way, you have to vacate your decision because the Trust is no longer in existence and has not been for the last seven or eight months, and you have no jurisdiction. "Heads I win, tails you lose." [1]

But justice is not a game, *United States v. Paglia*, 190 F.2d 445, 447 (2nd Cir.1951)(L.Hand, J.), and membership in the bar is a privilege burdened with conditions. "[A lawyer is] received into that ancient fellowship for something more than private gain. He [becomes] an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice." *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 470–71, 162 N.E. 487 (1928)(Cardozo, C.J.). The conduct of the Defendants was not faithful to these precepts.

The Mission Parties' Reply Brief inexplicably asserts as a point in their favor that they were forced to "focus[ ] extensive resources contesting with [sic] [Plaintiffs'] motion and brief for rehearing or reconsideration, which motion was granted by Judge Norgle on December 16, 2014." [Dkt. # 188 at 11]. Ignored is the fact that the Defendants' months of silence in informing Judge Norgle of the Trust's dissolution caused them to expend those resources. "[I]t does not 'come with very good grace' for the [Mission Parties] to ... [complain] of the injury which [they] ha[ve themselves] ... inflicted." *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566–567, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981). Being the cause of the harm of which they complain, their protestations are unpersuasive. See *Crowe ex rel. Crowe v. Zeigler Coal Co.* 646 F.3d 435, 444 (7th Cir.2011); *Crowe ex rel. Crowe v. Zeigler Coal Co.*, 646 F.3d 435, 444 (7th Cir.2011); *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490–492 (7th Cir.2002).

It is against this backdrop that we must consider the Mission Parties' motions for fees. It is certainly true that the motion was invited by my order of September 24, 2014. [Dkt. # 123]. At that point, of course, Defendants had cancelled the Trust surreptitiously—at least from the

---

1. Ironically, the Mission Parties' Reply Brief accuses the Plaintiff's lawyers of "gamsman-ship" and "bad faith." [Dkt. # 188 at 11–12].

court's and the Plaintiffs' perspective—and had already kept this from the court for seven months. And it was still a month before the Defendants finally deigned to let any judicial officer in on their activities with their October 8, 2014 motion for reconsideration. [Dkt. # 130]. Had I been aware of Defendants' conduct at the time, the tone of that order would have been decidedly different, and it is unlikely I would have granted Defendants' motion for fees.

That being said, I did grant Defendants' motion for sanctions [Dkt. # 114] "to the extent that the motion seeks attorneys' fees and costs incurred in connection with the motion . . . ." [Dkt. # 123]. The Order went on to advert to Local Rule 54.3:

In connection with the plaintiffs' obligation to pay the reasonable attorneys' fees and costs associated with the motion for sanctions, the parties shall conduct a Local Rule 54 conference. If the parties cannot reach agreement, defendant may file a properly documented motion, to which the 3 day notice rule will not apply.

[Dkt. # 123]. It could not have been more clear that any motion for fees from the Defendants had to comply with the Local Rule.

■ Defendants finally filed their motion for fees on January 8, 2015. [Dkt. # 155]. As such, it is arguably untimely under Local Rule 54.3(b). Under that provision, the motion or petition had to have been filed within 91 days of the order upon which the motion was founded. In other words, 91 days after the September 24, 2014 order, or December 24, 2014. The Mission Parties first argue that the Rule does not apply to sanctions provisions, but I clearly indicated in my order that the parties should follow the rule in this instance. As such, this was an instance where the parties were "otherwise directed by the court," L.R. 54.3(a) and the 91–day

limit was applicable. Clearly, Mission Parties were aware of this, as they later argue that the Plaintiffs did not confer with them in good faith *as dictated by the local rule* they now contend is inapplicable.

The Mission Parties' Reply Brief next argues that the Rule allows for a filing of a fee petition at any time before the entry of a final judgment. While the Rule does reference a final judgment or settlement agreement, it also states that the court may enter an order allowing for fees before a final judgment. It would be nonsensical that a discovery fee dispute at the beginning of a case would have to await resolution until three months after the entire case is resolved. That could take years. The logical reading of the Rule dictates that the fee petition must be file within 91 days of the order the petition is based on. *See, e.g., DeBartolo v. Health and Welfare Dept. of Const. and General Laborers' Dist. Council of Chicago and Vicinity,* 2012 WL 205906, *2 (N.D.Ill.2012)(order granting the motion for fees must serve as triggering event).

■ The Mission Parties also appeal to the undeniable discretion the court has in enforcing and interpreting its local rules. [Dkt. # 188 at 10]. *See Stevo v. Frasor,* 662 F.3d 880, 886–887 (7th Cir. 2011); *Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C.,* 574 F.3d 852, 859 (7th Cir.2009); *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. 351, 356 (N.D.Ill.2005). On the present record, the Mission Parties are not entitled to that kind of exercise of discretion. Parties who play fast and loose with the judicial system cannot expect favorable treatment on matters of discretion. *Campbell v. Clarke,* 481 F.3d 967, 969 (7th Cir.2007). Accordingly, the petition is denied as untimely. But, apart from any question of untimeliness, the facts of this case dictate that the Mission Parties' petition be denied.

■ For starters, clearly the fees and costs the Mission Parties incurred in presenting their motion for sanctions—part of which were in connection with discovery requests that went to the claims involving the cancelled / non-existent Trust [Dkt. # 103]—were far outstripped by the fees and costs incurred by the Plaintiffs and the waste of judicial resources in connection with the briefing and resolution of, first, the Plaintiffs' motion for summary judgment and, second, the Defendants' motion for reconsideration. It would be inequitable to award—really, to reward—the Defendants any fees given what transpired in this case. And that is so even if it were feasible to segregate the fees incurred in preparing that part of the motion relating to the counterclaims from that part relating to the complaint.

There is also another Local Rule 54.3 issue. The Rule requires the parties to any fee dispute to exchange information and confer over the amount of fees. L.R. 54.3(d). They then are directed to file a joint statement detailing any remaining disputes over fee entries. L.R. 54.3(e). There is no joint statement accompanying Defendants' fee motion. Instead, the Mission Parties claim that, despite their having sent Plaintiffs' counsel a letter on January 7, 2015, Plaintiffs' counsel have not conferred with them. [Dkt. # 155, ¶ 9; Dkt. # 155–2, at 2]. But, at that point, it was two weeks after the deadline for the fee motion. Moreover, the letter requested a meeting for that very day—January 7—at 2 p.m.

■ Significantly, Local Rule 54.3 requires a good faith effort to resolve the fee dispute. Demanding a meeting on the same day a letter/email was written and then filing a motion the next day is not reasonable, *Viteri–Butler v. University of California*, 2014 WL 60106, *6 (N.D.Cal. 2014), and thus does not satisfy the good faith requirement.[2] While the Mission Parties' Reply Brief claims that "before and after filing the Attorney Fee Motion," they "extensively communicated" with Plaintiffs' counsel to schedule a Local Rule 54 conference, their "repeated ... requests" went "unanswered," [Dkt. # 188 at 3–4], there is no proof of these supposed attempts prior to January 7th, and statements in briefs are not evidence and do not count. *Massuda v. Panda Exp., Inc.* 759 F.3d 779, 783–784 (7th Cir.2014); *United States v. Adriatico–Fernandez*, 498 Fed.Appx. 596, 599–600 (7th Cir.2012).[3]

Stunningly, the Mission Parties' Reply Brief argues that in addition to attempting on January 7th to set a conference for 2:00 p.m. that same day, they also sought a conference *after* they filed their fee petition on the 8th. The local rule could not be more clear that a conference must occur before a fee petition is filed—what would the point be otherwise. Moreover, Local Rule 54.3 has a provision covering recalcitrant opponents. *See* L.R. 54.3(g)("A motion may be filed seeking instructions from the court where it appears that the procedures set forth in this rule cannot be followed within the time limits established by the rule or by order of court because of ... the failure of one or more of the parties to provide information required by the rule, or ... other disputes between the parties that cannot be resolved after good faith attempts."). Thus, the inescapable reality is that the Mission Parties were not at the mercy of

2. We do not know what time the letter/email was sent or seen by the intended recipient or whether he could have had a conference on January 7th.

3. There being no certification as required by the local rule, that letter is the only scrap of evidence demonstrating any attempt by Mission Parties to comply with the local rule's requirements.

the Plaintiffs and cannot attribute their own delay to them.

## CONCLUSION

Any one of the foregoing factors counsels denial of the Mission Parties' fee petition. In combination, they require it. The Mission Parties' Motion for Attorneys' Fees [Dkt. # 155] is denied.